S11A1103. McFOLLEY v. THE STATE.
(717 SE2d 199)

MELTON, Justice.

Following a jury trial, Derek McFolley appeals his convictions for felony murder and cruelty to children, contending that he received ineffective assistance because his trial counsel failed to object to expert testimony on the ultimate issue in question.[1] For the reasons

---

[1] On October 18, 2005, McFolley was indicted for malice murder, felony murder, and cruelty to children with regard to the death of his son. Following a jury trial, McFolley was convicted of felony murder and cruelty to children on April 13, 2006. That same day, the trial

set forth below, we affirm.

In the light most favorable to the verdict, the record shows that McFolley and Elizabeth Henderson were the parents of six-month-old Demarcus McFolley ("the baby"). McFolley generally took care of the baby while Henderson worked. On June 7, 2004, while in McFolley's sole care, the baby went into cardiac arrest. McFolley's neighbor called 911, and, when paramedics arrived, the baby was nonresponsive and had a frothy pink substance exuding from his nostrils. The baby was then taken to the hospital, but died several days later.

An examination revealed that the baby had received a skull fracture to the back of his head, retinal hemorrhages, and bleeding around the brain. The State's medical examiner determined that these injuries were caused by violent shaking and hitting the baby's head against a flat surface with considerable force. The medical examiner also testified that these injuries would have quickly rendered the baby unconscious, and they could not have been the result of regular play. To the contrary, the medical examiner testified that the injuries had not been caused by accident. As part of the autopsy examination, the medical examiner also discovered that the baby had suffered a broken rib in the weeks before the fatal injury.

The State also called Dr. Randall Alexander as an expert on Shaken Baby Syndrome. Based on his review of the evidence, Dr. Alexander testified that the baby's fatal injuries were caused by violent shaking and a forceful impact by the back of the baby's head against a hard surface. Dr. Alexander stated that these injuries were wholly inconsistent with an accidental fall, likening the necessary impact to cause the injuries to a car accident. Upon questioning by the State, Dr. Alexander testified that, in his opinion, the baby suffered from Shaken Baby Syndrome, was the victim of child abuse, and exhibited injuries which could not have been accidental. In addition, Dr. Alexander testified that the prior rib fracture was also likely the product of physical abuse, as no other rational explanation existed for its presence. To come to each of these conclusions, Dr. Alexander relied on his extensive knowledge of a baby's anatomy, including the strength and elasticity of bones, a detailed analysis of the child's brain injuries, and the baby's history.

Shortly after the baby's death, McFolley was interviewed by police officers. During his interviews, McFolley made several incrimi-

---

court merged McFolley's convictions and sentenced McFolley to life imprisonment. On May 11, 2006, McFolley filed a motion for new trial, and an amended motion for new trial was filed on March 5, 2010. The trial court denied the amended motion on April 21, 2010, and McFolley timely filed a notice of appeal. This appeal was docketed to the April 2011 term of this Court, and submitted for decision on the briefs.

nating statements. He stated that he would take the blame for what happened to the baby, and he admitted that he was too rough with the child. He confessed that he sometimes wrestled with the baby and "body slammed" him. He also admitted to shaking the baby in the past, and he demonstrated to the interviewing police officer how he had done so. At trial, McFolley testified that weeks before the baby died, he had fallen down stairs in his apartment while holding the baby, but that he did not think that the baby had been harmed by the fall. McFolley also testified that, the day before the baby was taken to the hospital, the baby had fallen off a mattress that had been placed on the floor of the apartment. Again, however, McFolley did not feel that the baby was injured by this short fall and did not seek medical attention for the baby. In any event, both the State medical examiner and Dr. Alexander testified that, due to the severity of the baby's injuries, they could not have been the result of an accidental fall, which could not generate the requisite force.

This evidence was sufficient to enable the jury to determine that McFolley was guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

In his sole enumeration of error, McFolley contends that his trial counsel rendered ineffective assistance by failing to object to Dr. Alexander's testimony that the baby's injuries were caused by abuse, not an accidental fall.[2] Specifically, McFolley argues that Dr. Alexander's testimony in this regard was inappropriate and inadmissible because it went to the ultimate issue of fact in this case. McFolley, however, is incorrect on this point. McFolley's "argument has no merit because there was no attempt [by the expert] to attribute [the baby's] death to anything other than being [shaken, hit on the head, and abused in the process]; the ultimate issue was the identity of the person or persons responsible for the [abuse]." *Collum v. State*, 281 Ga. 719, 722 (2) (642 SE2d 640) (2007). Dr. Alexander, therefore, did not give an opinion regarding the ultimate issue in the case, and, as such, McFolley's ineffective assistance claim fails, because the evidence he complains about was neither objectionable nor inadmissible for this reason.

Furthermore, even if Dr. Alexander's testimony could be construed as going to an ultimate issue of fact, it was nonetheless admissible.

---

[2] Although the State's medical examiner also testified that the injuries were not the result of an accident, McFolley does not challenge this testimony.

[A]n expert may not testify as to his opinion as to the existence vel non of a fact . . . unless the inference to be drawn from facts in evidence is beyond the ken of the jurors — that is, unless the jurors, for want of specialized knowledge, skill, or experience, are incapable of drawing — from facts in evidence — such an inference for themselves.

*Allison v. State*, 256 Ga. 851, 853 (5) (353 SE2d 805) (1987). In this case, McFolley argued that he never abused the baby and that the baby's injuries must have been the result of some unfortunate accident. To support his theory, McFolley provided evidence that the baby suffered two accidental falls prior to his hospitalization. The question of whether these accidental falls could produce the types of injuries suffered by the baby requires the training of an expert to answer based on distance, force, brain trauma, etc. — a complicated calculus based on biology, anatomy, and physics. There is no question that this difficult determination based on medical knowledge and training is beyond the ken of the jury. Id. Therefore, under the circumstances of this case, the expert testimony that the injuries suffered by the baby could not have been accidentally inflicted was admissible. Again, there was no ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 17, 2011.

*William J. Mason*, for appellant.

*J. Gray Conger, District Attorney, Michael E. Craig, LaRae D. Moore, Letitia A. Sikes, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Dana E. Wolk, Assistant Attorney General*, for appellee.