295 Ga. 173
FINAL COPY

S14A0537.  DYER v. THE STATE.

HINES, Presiding Justice.

Following the denial of his motion for new trial, Orlando Dyer appeals his conviction for felony murder while in the commission of aggravated battery in connection with the death of his infant daughter, Azyani. He challenges the sufficiency of the evidence of his guilt, the admission of certain evidence at trial, and the effectiveness of his trial counsel.  For the reasons that follow, the challenges are unavailing, and we affirm.[1]

The evidence construed in favor of the verdicts showed the following.

---

[1] The crimes occurred on November 13, 2008.  On October 2, 2009, a Cobb County grand jury returned a six-count indictment against Dyer: Count 1 –  malice murder by causing blunt force trauma to Azyani's head; Count 2 –  felony murder while in the commission of aggravated battery by rendering Azyani's brain useless by blunt force trauma; Count 3 –  felony murder while in the commission of cruelty to children in the first degree by causing blunt force trauma to Azyani's head; Count 4 –  aggravated battery by rendering Azyani's brain useless by blunt force trauma; Count 5 –  cruelty to children in the first degree by causing blunt force trauma to Azyani's head; and Count 6 –  cruelty to children in the first degree by shaking Azyani.  Dyer was tried before a jury January 24-29, 2011, and found not guilty on Count 1, but guilty on all remaining counts.  On January 29, 2011, he was sentenced to life in prison on Count 2, and the verdicts on Counts 3, 4, 5, and 6, were found to merge with Count 2 for the purpose of sentencing. A motion for new trial was filed on February 1, 2011, amended on May 29, 2012, and denied on July 19, 2012.  A notice of appeal to the Court of Appeals was filed on August 13, 2012, and the appeal was transferred to this Court. The case was docketed in this Court's 2014 January term, and the appeal was submitted for decision on the briefs.

In November 2008, Dyer and his wife, Laurievett Calvo-Dyer, lived in an apartment in Cobb County with their two children: one-year-old Elijah and two-month-old Azyani. On November 12, 2008, Calvo-Dyer began a new job after two months of recuperating from Azyani's birth, and she left for work between 6:00 and 6:30 a.m. Before Calvo-Dyer's return to work that day, Dyer had not taken care of Azyani without her being present somewhere in the apartment. Only Dyer and Calvo-Dyer provided care for Azyani, with Calvo-Dyer being the primary caregiver. Azyani "cried really hard" unless somebody was holding her, and at those times, Dyer gave the baby over to Calvo-Dyer.

Also, on this first day, Calvo-Dyer's cousin, who had been staying at the apartment, was present. Calvo-Dyer came home around 2:30 p.m., and Dyer left for work at 4:30 p.m. He returned home from his job at approximately 12:30 a.m. on November 13, 2008, and went to sleep a few hours later. Between 3:00 and 4:30 a.m., Dyer heard Azyani crying and got up to feed her. Around 6:00 a.m., Calvo-Dyer got up to go to her second day of work and noticed that both children were fine and safely asleep before she left. Dyer's brother was also asleep in the living room.

Around 11:30 a.m., emergency responders arrived at Dyer's apartment

complex in answer to a call from Dyer's brother that a two-month-old child was unresponsive; the brother called for help after Dyer asked him to look at the baby who had blood and foam on her mouth. While responders searched for the apartment, a car driven by Dyer pulled in front of their vehicle and forced it to stop. Dyer got out of the car, reached into the back seat, and retrieved the unresponsive baby girl; the child was not breathing and blood was trickling from her nose. A responder immediately began to try and resuscitate the infant, and asked Dyer what had happened. Ostensibly because of a language barrier, Dyer did not answer. When police arrived, however, he stated in "kind of choppy English" that he called 911 after he noticed Azyani bleeding from her nose and choking. As the emergency technicians worked to resuscitate Azyani, Dyer never showed any emotion, and just stood in the background with his hands in his pockets; he appeared to be "very nonchalant."

Azyani was rushed to a hospital, and en route, the emergency responders were able to get a slight pulse back in the infant, but she was still not breathing, was neurologically unresponsive, and was in critical condition. Dyer showed up at the hospital's emergency room and told a Spanish-speaking nurse that Azyani had been sick the week earlier and was fussy and restless that morning,

3

that he took the baby from the crib and put her in bed with him, and that later in the morning he noticed blood coming from her nose; he stated that the baby had not fallen or suffered any head injuries. Again, Dyer showed no emotion, and was very calm, displaying a "very flat affect."

After tests revealed bleeding next to the baby's brain and two skull fractures, she was transferred to a facility with a pediatric intensive care unit. Once there, it was determined that the child's injuries were not consistent with accidental trauma. Tests revealed that the baby had no brain activity, and subsequently she was declared dead.

The medical examiner determined that the cause of death was blunt force trauma to the head and trauma to the torso, evidenced by rib fractures; the identified multiple injuries were all consistent with blunt head trauma and some component of shaking. Among the injuries was an L-shaped skull fracture that indicated a severe blow against a hard surface. Additionally, there were hemorrhages in Azyani's upper neck and both eyes that were consistent with her being held firmly by the neck or shaken. Based on these findings, the manner of Azyani's death was determined to be a homicide.

When Dyer was initially interviewed by police at his apartment, he stated

that nothing out of the ordinary had happened on the morning of Azyani's death and that she had been fine, but he claimed that about a week before, a plastic box of baby wipes had fallen on the child's head while she was in her crib, and that then the baby's head had "seemed tender." However, subsequently during an interview at the police station, Dyer gave a different account. He claimed that while carrying Azyani after her bath, he slipped on a toy ball and fell to his knees; that the baby "flew out of his arms," collided with a closet and fell to the floor, hitting her shoulder and head; and that about ten minutes later, he noticed blood and foam coming from Azyani's mouth. Throughout, Dyer's demeanor remained "flat."

1. In five separate enumerations of error, Dyer claims that the evidence was insufficient to sustain his convictions for malice murder, felony murder, aggravated assault, cruelty to children in the first degree, and "shaking baby offense" in that the evidence did not exclude every other reasonable hypothesis except that of his guilt.

First, Dyer was not convicted of malice murder; indeed, he was acquitted of the charge. Nor was he charged with or convicted of aggravated assault, or any offense denominated as "shaking baby offense." As noted, Dyer was found

5

guilty of felony murder while in the commission of aggravated battery by using blunt force against the baby, so severe that it resulted in trauma which rendered her brain "useless," and the remaining charges which were premised upon aggravated battery and cruelty to children in the first degree. But, he was sentenced only for the felony murder premised upon aggravated battery. See footnote 1, supra.

Second, Dyer cites what he deems to be conflicting expert evidence or evidence favorable to him. However, as this Court has often stated, it is for the jury to resolve any conflicts in the evidence and to assess the credibility of witnesses, and the resolution of any such conflicts adversely to the criminal defendant does not render the evidence insufficient. *Heidt v. State,* 292 Ga. 343, 345 (1) (736 SE2d 384) (2013).

Certainly, a conviction based upon circumstantial evidence requires that the proven facts not only be consistent with the hypothesis of guilt, but that they exclude every other reasonable hypothesis save that of the guilt of the accused. *Reeves v. State*, 294 Ga. 673 (755 SE2d 695) (2014). However, whether the evidence does exclude every other reasonable hypothesis is ordinarily a question for the jury, and this finding by the jury will not be disturbed unless the verdict

of guilt is unsupportable as a matter of law. Id. And, that is plainly not the situation in this case. Reviewing the evidence in a light most favorable to the prosecution, it is sufficient to have allowed the jury to find that the evidence excluded all reasonable hypotheses except that of Dyer's guilt, and to have authorized any rational trier of fact to find him guilty beyond a reasonable doubt of the crimes of which the jury did indeed find him guilty. Id.; *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In five separate enumerations of error, Dyer contends that he is entitled to a new trial because improper testimony, expert and otherwise, was admitted into evidence involving the ultimate question for the jury as to whether he was guilty of the crimes for which he was convicted.[2]

(a) Dyer first cites testimony by the medical examiner, Dr. Frist, that the doctor believed the manner of Azyani's death to be a "homicide," and argues that this was impermissible because the basis of the opinion involved facts which the jury could understand and evaluate for itself, and therefore, was not a proper subject of medical expert opinion. However, Dyer did not make any

---

[2]Here again, Dyer cites the charge of malice murder; but as noted, he was found not guilty of that crime.

7

contemporaneous objection at trial to the testimony; therefore, he has waived consideration of his present objection. *Smith v. State*, 276 Ga. 97, 99 (4) (575 SE2d 450) (2003). And, contrary to his urging, the evidentiary issue is not properly reviewed for plain error. *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012); *Williams v. State*, 291 Ga. 501, 505 (2) (732 SE2d 47) (2012). In any event, the medical examiner's testimony regarding the manner of death was not an improper invasion of the province of the jury on the determination of whether the child's death resulted from an intentional killing or an accident. *Sharpe v. State*, 291 Ga. 148, 150 (2) (728 SE2d 217) (2012).

(b) Dyer next complains that testimony by Dr. Messner and Dr. Greenbaum, physicians consulted on Azyani's case, that Azyani died of abusive head trauma, and that her injuries were not consistent with an accidental fall or incidence involved the ultimate issue for the jury. But, this complaint is meritless.

The trial court found Dr. Messner qualified as an expert in pediatrics and abusive head trauma, and Dr. Greenbaum qualified as an expert in forensic pathology and child abuse. As to the cited testimony of Dr. Greenbaum, Dyer made no objection on the basis now presented, and therefore, cannot be heard

8

to now complain of it. *Smith v. State*, supra at 99 (4). However, contrary to Dyer's urging, the cited testimony of either physician did not invade the province of the jury because the ultimate issue at trial was the identity of the person or persons responsible for the fatal abuse of Azyani, and there was no attempt by either Dr. Messner or Dr. Greenbaum to attribute the baby's death to Dyer or to any other specific individual. *McFolley v. State*, 289 Ga. 890, 892 (717 SE2d 199) (2011).

(c) Dyer also complains that a detective's testimony about his communication with the pediatric hospital doctors regarding their beliefs that Azyani's injuries were not the result of accident was improperly admitted into evidence because it was hearsay, and went to the ultimate issue at trial. Here, again there was no objection to the testimony. *Smith v. State*, supra at 99 (4). Nevertheless, the cause of death was not the ultimate issue for the jury to determine. *McFolley v. State*, supra at 892. Further, the testimony at issue does not fall within the definition of hearsay applicable at the time of this trial, former OCGA § 24-3-1 (a),[3] because, inter alia, it was not offered for its truth, i.e., that

[3] The Code section has been replaced by OCGA § 24-8-801. Ga. L. 2011, p. 99, § 2/HB 24, effective January 1, 2013.

the fatal injuries were not the result of accident. *Reaves v. State*, 292 Ga. 545, 548 (2) (d) (739 SE2d 368) (2013), citing *Fugitt v. State*, 256 Ga. 292 (1) (c) (348 SE2d 451) (1986). Moreover, even assuming arguendo that the testimony was hearsay and improperly admitted, it was merely cumulative of other properly admitted evidence, and therefore, it is highly probable that its admission did not affect the outcome at trial. *Johnson v. State*, 294 Ga. 86, 89 (3) (750 SE2d 347) (2013).

3. Dyer also contends that he is entitled to a new trial because of the admission of testimony by the medical examiner that the baby had healing and recent rib fractures, which he claims was irrelevant, immaterial, and prejudicial to him because he was not charged with causing rib fractures, and that this evidence combined with "improper opinion evidence that the child was the victim of a homicide or was otherwise the victim of abuse" led the jury into believing that he had a history of child abuse which culminated in a homicide.

But here again, Dyer did not object to this testimony at trial, and the plain error doctrine is inapplicable. See Division 2 (a), supra. Nevertheless, evidence is relevant if it logically tends to prove or to disprove a material fact at issue.

10

*Owens v. State*, 248 Ga. 629, 630 (284 SE2d 408) (1981). The evidence of Azyani's fractured ribs was relevant and admissible inasmuch as Dyer was charged, inter alia, with cruelty to children in the first degree by shaking the child and causing her excessive physical and mental pain. Additionally, this evidence was part of the constellation of injuries considered by the expert medical witnesses in determining whether the baby's condition was the result of accident.

4. Finally, Dyer maintains that his trial counsel provided deficient representation which prejudiced his defense because counsel repeatedly failed to object to the admission of what he characterizes as "improper testimony involving irrelevant and prejudicial matter and expert opinion testimony regarding the ultimate issue for the [jury]," cited in his prior enumerations of error. However, as this Court has explained, such objections would not have been sustained, and the failure of counsel to make a meritless objection cannot be evidence of counsel's ineffective assistance. *Van v. State*, 294 Ga. 464, 466 (3) (754 SE2d 355) (2014).

Dyer is not entitled to a new trial on the bases urged.

Judgments affirmed. All the Justices concur.

11

Decided May 5, 2014.

Murder. Cobb Superior Court. Before Judge Kreeger, Senior Judge.

David P. Smith, for appellant.

D. Victor Reynolds, District Attorney, Charles P. Boring, Grady A. Moore, Amelia G. Pray, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christian A. Fuller, Assistant Attorney General, for appellee.