296 Ga. 803
FINAL COPY

S14A1532.  WOODARD v. THE STATE.

NAHMIAS, Justice.

Appellant William Woodard was convicted of malice murder and other crimes in connection with the shooting deaths of two DeKalb County police officers, Eric C. Barker and Ricky L. Bryant, Jr.  Although the State sought the death penalty, the jury recommended sentences of life without parole.  Appellant now contends that several jury instructions improperly undermined his defense of justification by lessening the State's burden of proof, and he asserts that his trial counsel were ineffective in failing to object to the trial court's instruction, tracking the language of OCGA § 16-3-21 (b) (2), that a person is not justified in using force in self-defense if he is committing a felony.  We affirm.[1]

---

[1]  The crimes occurred around midnight on the night of January 15-16, 2008.  On April 7, 2008, Appellant was indicted for two counts of malice murder, two counts of felony murder, two counts of possession of a firearm during the commission of a felony, and two counts of possession of a firearm by a convicted felon.  On May 6, 2008, the State filed a notice of intent to seek the death penalty.  On April 12, 2010, this Court granted Appellant's application for interim review, but on September 10, 2010, the case was dismissed as moot based on a concession made by the State during oral argument.  See Case No. S10A1192.  On remand, the trial court authorized a second application for interim review; on June 30, 2011, this Court entered an order remanding the case to the trial court for further inquiry.  See Case No. S11R1352.  After weeks of jury selection, testimony in the guilt-innocence phase of Appellant's trial began on October 1, 2012.  On October 12, the jury returned verdicts finding Appellant guilty of all charges.  On October 19, the jury returned its verdicts in the penalty phase, recommending a sentence of life in prison without the possibility of parole for the murder of each officer.  On October 22, the trial court sentenced Appellant to serve consecutive terms of life in prison without parole on the two malice murder convictions plus five years on each

1.    Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. At about 9:00 p.m. on January 15, 2008, Appellant and his friend Mario Westbrook went to a sparsely occupied apartment complex in south DeKalb County to visit Yanita Payne, the mother of one of Appellant's friends. While Appellant was talking on Payne's telephone, he took out a handgun and put it on her table. When she asked why he had the gun, Appellant explained that he knew that off-duty police officers worked security at the complex and patrolled the parking lot and said, "They tote theirs, I tote mine. They draw theirs, I draw mine." Appellant, who had several prior felony convictions, had also told his girlfriend on numerous occasions that he carried his gun "everywhere he go[es]," and whenever they were together and Appellant's girlfriend mentioned that she saw a police officer, he would tell her "that he was under [the] recidivist act and that he wasn't going back to jail, he would have court in the street."

---

conviction for possession of a firearm during the commission of a felony. The felony murder verdicts were vacated by operation of law, and the remaining guilty verdicts merged. On November 14, 2012, Appellant filed a motion for new trial, which his new appellate counsel amended on September 17 and 30, 2013. After an evidentiary hearing, the trial court entered an order denying the motion on February 4, 2014. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

After visiting Payne, Appellant and Westbrook left the apartment complex, but they returned around midnight in a car driven by Herbie Durham to buy beer at an illegal "shot house" run by Major Fields from his apartment across the hallway from Payne's unit. Durham parked the car, which had dark-tinted windows, in front of the building, and Appellant got out and walked up the stairs to the shot house. Appellant went inside and bought beer, cigarettes, and cigars from Fields using a counterfeit $50 bill. After receiving his change in genuine currency, Appellant left the apartment, but Fields, who by then had realized that the bill was counterfeit, caught up with Appellant before he descended the stairs back to the parking lot. Appellant told Fields that the police were outside, so Fields went back into his apartment.

Officer Barker and Officer Bryant were working off-duty security, in uniform, at the complex. When Appellant walked down the stairs, he encountered Officer Barker in front of Durham's car. The officer said something to Appellant, but Appellant ignored him and got into the front passenger seat. Officer Barker then approached the driver's side of the car. Durham rolled down his window, and the officer told him to turn off the car and present his driver's license; Durham complied. Officer Barker said that he

3

smelled marijuana and asked if there was any marijuana in the car, which Durham denied. The officer then requested identification from Appellant, who reached in his pocket but did not produce any identification.

At this point, Officer Bryant arrived to assist Officer Barker and approached the passenger side of the car. Officer Bryant opened the front door and asked Appellant to get out, but Appellant did not comply. The officer then pulled Appellant out of the car and placed him with his hands on the vehicle. Standing behind Appellant, Officer Bryant started to frisk him, but he began to scuffle, trying to avoid the pat-down. Officer Barker ran around the car to assist Officer Bryant, but as Officer Barker reached the passenger side, Appellant managed to break free from Officer Bryant and draw his gun. Appellant then fired repeatedly at the officers, striking each of them three times before fleeing into the night. Officer Bryant died at the scene, and Officer Barker was pronounced dead at the hospital. Appellant testified at trial, admitting that he shot the officers but claiming that they were beating him when he did so, causing him to fear for his life.

Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's

4

practice in murder cases, we have reviewed the record and conclude that the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant contends first that several of the trial court's jury instructions improperly undermined his sole defense of justification by lessening the State's burden of disproving his self-defense claim beyond a reasonable doubt. In particular, Appellant challenges the instructions that a police officer has a general duty to enforce the law 24 hours a day, that he lawfully discharges that duty when he arrests an individual who has committed a crime in his presence, and that probable cause for an arrest does not require the quantum of proof necessary for proof of guilt in a trial. Appellant also challenges the instructions regarding police-citizen encounters and the legal requirements for a valid detention or arrest, and he contends that the court erred in instructing the

5

jury that the mere odor of marijuana establishes probable cause for an arrest.

We note that Appellant's defense was clearly not, in fact, limited to a customary

self-defense claim, but rather focused on his right under Georgia law to forcibly

resist an unlawful arrest or an arrest made using excessive force. See Ramirez

v. State, 279 Ga. 569, 577 (619 SE2d 668) (2005); Mullis v. State, 196 Ga. 569,

577-579 (27 SE2d 91) (1943).

Because Appellant did not object to these jury charges on the grounds he

now raises before the jury retired to deliberate, appellate review of his claims is

precluded unless the particular jury instruction in question was "plain error

which affects [his] substantial rights." OCGA § 17-8-58 (b); State v. Kelly, 290

Ga. 29, 33 (718 SE2d 232) (2011).[2]

> An appellate court may . . . reverse a trial court for plain error
> if the instructional error was not affirmatively waived by the
> defendant, was obvious beyond reasonable dispute, likely affected

---

[2] OCGA § 17-8-58 says:
(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.
(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

Wells v. State, 295 Ga. 161, 167, n. 4 (758 SE2d 598) (2014). See also Kelly, 290 Ga. at 33. In evaluating claims of instructional error, we examine the jury charge as a whole. See Laster v. State, 276 Ga. 645, 650 (581 SE2d 522) (2003).

Appellant has failed to demonstrate error, much less plain error, in the jury instructions he now disputes. Law enforcement officers have a general duty to enforce the law and maintain the peace, and this duty exists 24 hours a day, including when an officer is working a private security job. See Duncan v. State, 163 Ga. App. 148, 148-149 (294 SE2d 365) (1982). "An arrest for a crime may be made by a law enforcement officer . . . [w]ithout a warrant if . . . [t]he offense is committed in such officer's presence or within such officer's immediate knowledge . . . ." OCGA § 17-4-20 (a) (2) (A). See Mullis, 196 Ga. at 576. And there is "a great difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest." Banks v. State of Ga., 277 Ga. 543, 544 (592 SE2d 668) (2004) (citation and punctuation omitted). Accord Brinegar v. United States, 338 U. S. 160, 173 (69

7

SCt 1302, 93 LE 1879) (1949). The trial court's instructions incorporating these principles of law were not erroneous. Likewise, in Ramirez, another case where a defendant shot and killed a police officer and claimed self-defense, this Court approved jury instructions on police-citizen encounters and the standards for legal detention and arrest nearly identical to the ones given in this case. See Ramirez, 279 Ga. at 577.

Finally, Appellant's claim that the trial court instructed the jury that the mere odor of marijuana establishes probable cause for arrest is not supported by the record. What the court actually said was:

> Probable cause for an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a belief by a man of reasonable caution that a crime has been committed. . . . To justify an arrest without a warrant an officer need not see the act which constitutes the crime take place if by any of the officer's senses the officer has personal knowledge of its commission. Odor, as well as sight, hearing, taste, or touch can be used to establish probable cause for arrest.

The last sentence was essentially a direct quote from O'Keefe v. State, 189 Ga. App. 519, 526 (376 SE2d 406) (1988). The instruction did not refer explicitly to the odor of marijuana, nor did it say that odor alone establishes probable cause. Instead, the court correctly advised the jury that the information that a

8

police officer obtains through all five senses, including smell, may be considered in determining whether, under the totality of the circumstances, an arrest was permitted. See id. See also State v. Folk, 238 Ga. App. 206, 208 (521 SE2d 194) (1999) (whole court).

In sum, the jury instructions now at issue were needed for the jury to decide whether Appellant reasonably believed that his actions were necessary to resist an unlawful arrest or an arrest made with excessive force. Contrary to Appellant's contention, the jury was not directed to find that the victims were engaged in the lawful discharge of their duties at the time of the shootings. Instead, the trial court repeatedly instructed the jury that the State had the burden of proving beyond a reasonable doubt that the officers' conduct toward Appellant was lawful and that it was for the jury to decide under all the facts and circumstances whether Appellant's actions were justified.

3. Appellant also claims that the trial court erred in instructing the jury that "a person is not justified in using force if that person . . . is attempting to commit, is committing, or is fleeing after the commission or attempted commission of a felony." This instruction is part of the pattern jury instruction on "Justification; Use of Force in Defense of Self or Others." See Council of

9

Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 3.10.10 (4th ed. 2007 and Supp. 2013). It recites, nearly verbatim, Georgia's statute establishing when the use of force is justified in defense of oneself or others. OCGA § 16-3-21 (b) (2) says:

> A person is not justified in using force under the circumstances specified in subsection (a) of this Code section [i.e., defense of self or others] if he: . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony[.]

One would think that a trial court could not err in instructing the jury using the language of the applicable statutory law.

Appellant bases his counterintuitive argument on Heard v. State, 261 Ga. 262 (403 SE2d 438) (1991), where a majority of this Court held that OCGA § 16-3-21 (b) (2) should apply only "where it makes sense to do so, for example, to a burglar or robber who kills someone while fleeing," and not to a defendant who killed someone while committing the felony of possessing a firearm as a convicted felon. Heard, 261 Ga. at 263. According to Appellant, it does not make sense to apply OCGA § 16-3-21 (b) (2) in this case either, because the felony that he was found guilty of committing when he shot and killed the officers was again possession of a firearm by a convicted felon, which he says

10

is a "status" felony that had no nexus to the officers' use of force against him.[3]

(a)     At trial, Appellant's counsel did not object to the portion of the self-defense instruction tracking OCGA § 16-3-21 (b) (2), and indeed they requested that the trial court give the pattern charge including that language. As discussed above, when a defendant fails to object to an alleged instructional error before the jury begins its deliberations, appellate review is precluded unless the alleged defect amounts to "plain error," OCGA § 17-8-58 (b), and there is no plain error where the defendant "affirmatively waived" the alleged error. Wells, 295 Ga. at 167, n. 4. The concept that even a plain error can be waived is often referred to as "invited" error. See, e.g., Shaw v. State, 292 Ga. 871, 873, n. 3 (742 SE2d 707) (2013). However, looking to the federal plain-error decisions on which this Court has relied in articulating the scope of plain-error review under OCGA § 17-8-58, we have cautioned that a "waiver" in this context differs from the "forfeiture" that results from the mere failure to timely assert a legal right. See Cheddersingh v. State, 290 Ga. 680, 684 (724 SE2d

---

[3] The crime of possession of a firearm by a convicted felon is not truly a "status" offense in the way the law normally uses that term. True status offenses, such as the crime of "being a felon," are unconstitutional because they lack an "actus reas," while possession crimes require the offender to act to obtain and possess the prohibited item – acts that may be criminally punished. See Shivers v. State, 286 Ga. 422, 427-428 (688 SE2d 622) (2010) (Nahmias, J., concurring specially).

11

366) (2012).  An affirmative waiver requires the "'"*intentional* relinquishment

or abandonment of a *known* right."'"  Id.  (emphasis added) (quoting United

States v. Olano, 507 U. S. 725, 733 (113 SCt 1770, 123 LE2d 508) (1993)).

We note that whether a defendant's request that the trial court give a jury

instruction is properly held to affirmatively waive *all* alleged errors regarding

language included in or omitted from the instruction, or only errors regarding

language that the record shows the defendant included or omitted after

considering the controlling law, is a question that has divided the federal courts

of appeals.[4]  This Court has not squarely addressed this question with respect to

review under OCGA § 17-8-58, although we have recognized the possibility that

our cases applying the "invited error" concept broadly to preclude review of

---

[4]  Compare, e.g., United States v. Perez, 116 F3d 840, 844-845 (9th Cir. 1997) (en banc) (explaining that, after Olano, an instructional error no longer may be deemed invited merely because the defendant proposed the instruction in question; instead, to establish the waiver of a "known right," the record must show that "the defendant considered the controlling law . . . and in spite of being aware of the applicable law, proposed or accepted a flawed instruction"), with, e.g., United States v. Frank, 599 F3d 1221, 1240 (11th Cir. 2010) (holding, without reference to the Olano standard, that "when a party agrees with a court's proposed instructions," including when a party requests the instructions, "the doctrine of invited error applies, meaning that review is waived even if plain error would result").  See also United States v. Mariano, 729 F3d 874, 881 (8th Cir. 2013) (suggesting that even "[i]f proposing an instruction is not waiver of the right to challenge it on appeal, then [the Eighth Circuit's] 'invited error' cases also could be understood as a categorical conclusion that a conviction based on a mistaken jury instruction that was specifically requested by the defendant does not result in a miscarriage of justice" and thus fails under the final prong of the plain-error test).

12

requested jury instructions, if decided before or without reference to the enactment of OCGA § 17-8-58, may not remain viable. See Shaw, 292 Ga. at 873, n. 3.

This case does not require us to delve deeper into this question, however, because even under the more forgiving of the federal circuit approaches to error invited by requesting a jury instruction, Appellant waived his claim of error based on Heard. Appellant did not merely request the pattern jury instruction on self-defense, including the now-disputed language from OCGA § 16-3-21 (b) (2). At the charge conference, Appellant's counsel asked that one portion of that language (the phrase discussing flight) be deleted on evidentiary grounds, and in the course of discussing another requested charge relating to felons who possess firearms, Appellant's counsel, the prosecutor, and the trial court specifically discussed Heard and its application to this case. The court ultimately decided to leave in the flight language and declined to give the additional charge (rulings that are not challenged on appeal), and Appellant's counsel, despite their awareness and discussion of Heard, did not withdraw the request that the court give the full self-defense pattern instruction. Under these circumstances, Appellant clearly invited the error that he now alleges based on

13

Heard and affirmatively waived appellate review of that error.

(b)     Nevertheless, because Appellant also claims that his trial counsel provided ineffective assistance with respect to the alleged Heard error, see Division 4 below, we will go ahead and address the Heard issue on the merits, as we often do when an issue for which direct appellate review has been waived is alternatively raised as a claim that trial counsel performed ineffectively in failing to preserve a meritorious issue for appeal.  See, e.g., Ross v. State, 296 636, 638-640 (769 SE2d 43) (2015); Dyer v. State, 295 Ga. 173, 177-179 (758 SE2d 301) (2014); Hartsfield v. State, 294 Ga. 883, 886-887 (757 SE2d 90) (2014).  We conclude that the trial court did not commit reversible error in charging the jury using the language of OCGA § 16-3-21 (b) (2), because Heard is not good law.[5]

---

[5]  It is particularly appropriate to take this approach in this case, because contrary to the assertion made in Justice Benham's special concurrence, the question of prejudice under Strickland v. Washington, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984), is very close – if, as Justice Benham assumes, Heard is good law and Appellant's trial counsel therefore performed deficiently in not arguing that the trial court should have omitted the language of OCGA §16-3-21 (b) (2) from the self-defense instruction.  The State was required to disprove Appellant's self-defense claim beyond a reasonable doubt, and while the credibility of Appellant's testimony supporting that claim was certainly challenged, so too was much of the testimony from the eyewitnesses to which Justice Benham refers without acknowledging any credibility issues.  The witness who testified that he believed Appellant was trying to get away from the officers as they attempted to frisk him, for example, was Major Fields, the operator of the illegal shot-house, who also testified that the officers were not in uniform, when in fact they were, and admitted that he had lied to the police in his interview after the shooting and that he had a disability that caused long-term memory problems.

14

Heard's holding was criticized at the time by two Justices who dissented, see 261 Ga. at 264-265 (Weltner, J., dissenting in relevant part, joined by Smith, P. J.), and more recently by three more Justices, see Smith v. State, 290 Ga. 768,

Similarly, while the testimony of Appellant's girlfriend indicated that he had armed himself in anticipation of an encounter with the police, it does not prove that he did so for the express purpose of *initiating* a shootout with police officers, particularly when considered in conjunction with the testimony about what Appellant told the woman he visited in the complex earlier on the evening of the shooting. "They draw theirs, I draw mine" is an indication that Appellant would act only after facing a drawn gun.

As a matter of judicial review for compliance with *due process* under the standard set forth in Jackson v. Virginia, 443 U. S. at 319, the jury was fully entitled to reject Appellant's testimony and to otherwise determine the credibility of the witnesses and resolve conflicts and inconsistencies in the evidence. That is the standard of review we properly apply in Division 1 above in summarizing the evidence presented at trial, and it is why we hold there that the evidence was sufficient to support Appellant's convictions. It is also the standard that was being applied in all of the cases cited on page 816 of the special concurrence. But it is *not* the standard that courts use in determining whether a legal error caused prejudice to a defendant; if it were, then there would be harmful error or Strickland prejudice only in cases where the evidence was insufficient and the convictions already reversible on due process grounds. In the context of determining prejudice, "we review the record de novo. In doing so, we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case." Boothe v. State, 293 Ga. 285, 289-290 & n. 8 (745 SE2d 594) (2013) (citation and punctuation omitted) (explaining the difference between the way courts review the harm caused by errors and the way courts conduct due process review of the sufficiency of the evidence). See also Strickland, 466 U. S. at 695 ("In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."); Humphrey v. Morrow, 289 Ga. 864, 870 (717 SE2d 168) (2011) (explaining that when the court assesses the effect of evidence that was *not* presented to the jury at trial due to defense counsel's deficient performance – which is the basis for many ineffective assistance claims – "our assessment of how a jury might have reacted to the additional evidence . . . is an assessment of the legal question of prejudice, which we perform de novo"). Properly reviewing the *entire* record using the *correct* standard of judicial review, one might say that the evidence disputing Appellant's claim of self-defense was substantial, but no one would fairly call it "overwhelming." Even the State's briefs do not call the evidence "overwhelming," and indeed the State does not argue that any Heard error in the self-defense instruction did not cause prejudice; it argues only that there was no error. For these reasons, we appropriately address whether there was error under Heard, which involves deciding whether Heard is good law.

15

776-779 (723 SE2d 915) (2012) (Nahmias, J., concurring, joined by Carley, P. J., and Hines, J.). In this case, the State has expressly asked us to reconsider and overrule Heard.[6] As the State correctly reminds us, Heard disregarded the plain language of OCGA § 16-3-21 (b) (2), which refers to the commission of "felony" offenses without exception or limitation; overruled multiple precedents holding broadly that a defendant cannot assert self-defense if he used deadly force while "committing . . . a felony"; undermined the policy-making authority of the General Assembly; and was unnecessary to prevent most of the "unfair" applications that concerned the Heard majority. See Smith, 290 Ga. at 776-779 (Nahmias, J., concurring). Thus, we must decide whether considerations of stare decisis counsel against overruling Heard.

> Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. . . . Nevertheless, when governing decisions are unworkable or are badly reasoned, this Court has never felt constrained to follow precedent. . . . Stare decisis is not an inexorable command; rather, it is a principle of policy and not a mechanical formula of adherence to the latest decision. . . .

---

[6] In Smith, the State did not ask us to reconsider Heard, as the concurrence emphasized. See Smith, 290 Ga. at 776 (Nahmias, J., concurring). See also id. at 779 ("For the reasons discussed above, if we are asked to overrule Heard, the request would require serious consideration.").

16

State v. Hudson, 293 Ga. 656, 661 (748 SE2d 910) (2013) (citation omitted). "In considering whether to reexamine a prior erroneous holding, we must balance the importance of having the question *decided* against the importance of having it *decided right*." State v. Jackson, 287 Ga. 646, 658 (697 SE2d 757) (2010) (emphasis in original). In doing so, we consider factors such as the antiquity of the precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning. See Hudson, 293 Ga. at 661; Jackson, 287 Ga. at 658.

These factors weigh heavily in favor of overruling Heard. Heard is not yet 25 years old, and it overruled prior well-established precedent without engaging in any analysis of stare decisis. See Hudson, 293 Ga. at 661-662 (overruling 38-year-old constitutional interpretation precedent); Jackson, 287 Ga. at 658-659 (overruling statutory interpretation precedent that was nearly three decades old); Durrence v. State, 287 Ga. 213, 216, n. 5 (695 SE2d 227) (2010) (overruling, in a footnote, a 26-year-old statutory interpretation precedent). See also Smith, 290 Ga. at 779 (Nahmias, J., concurring) (noting that "the holding in Heard has not been deeply embedded in our law"). Eliminating Heard also would not upset reliance interests of the sort that the law usually recognizes in the stare

decisis analysis.  See Hudson, 293 Ga. at 661 (overruling precedent that, like Heard, did not create meaningful reliance interests because it did not involve property or contract issues and established no substantive rights).  Heard has been cited infrequently and has never actually resulted in a conviction being reversed by this Court (even in Heard itself).[7]  As for workability, the "standard" that Heard established — whether the application of OCGA § 16-3-21 (b) (2) "makes sense" to a majority of the Justices of this Court – provides nebulous guidance for the participants in the criminal justice system who must apply it, such as trial judges confronted with objections to jury instructions and criminal defense attorneys advising their clients.  See Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc., 294 Ga. 593, 602 (755 SE2d 184) (2014) (overruling 19-year-old precedent applied only four times by appellate courts, in part because having a "bright line rule" was preferable to the precedent's "scheme [of] allowing judicially created exceptions").

_____

[7] The Heard majority held that the error that it identified in the jury instructions as to felony murder was harmless because the trial court "merged" the felony murder count into the malice murder conviction, mooting any felony murder errors.  See 261 Ga. at 263.  In this case, while Appellant was convicted of malice murder, with the felony murder counts properly vacated, the trial court's instruction was not limited to the felony murder charges.  In nearly 25 years, the Court of Appeals has relied on Heard to reverse a defendant's convictions only once.  See Jones v. State, 220 Ga. App. 784, 785-786 (470 SE2d 326) (1996).

18

The final and most important factor in the stare decisis analysis — the soundness of the precedent's reasoning — cuts most strongly against retaining Heard.

> Under our Constitution and legal tradition, judges are supposed to apply the law enacted by the legislature based on what a statute says, not based on whether the judges believe it "makes sense" to apply the statute to the case at hand or instead feel it would be "unfair" to do so.

Smith, 290 Ga. at 775 (Nahmias, J., concurring). Heard departed from this principle, and did so without any "analysis of the statutory language or other canons of statutory construction, such as a need to avoid a constitutional violation." Id. at 777. Whether the policy established by the Heard majority is good or bad is beside the point, because it is not the policy established by the body that is constitutionally entitled to establish the laws of Georgia. See id. at 778; Ga. Const. of 1983, Art. III, Sec. VI, Par. I ("The General Assembly shall have the power to make all laws not inconsistent with this Constitution, and not repugnant to the Constitution of the United States, which it shall deem necessary and proper for the welfare of the state."). If a law enacted by the General Assembly is not unconstitutional — and the Heard majority identified nothing unconstitutional about OCGA § 16-3-21 (b) (2) — the obligation of this Court

19

is to apply the law by its terms, whether we like it or not.[8]

We could endeavor to distinguish this case from Heard on the ground that it "makes sense" to us to apply OCGA § 16-3-21 (b) (2) to Appellant because there is evidence indicating that he was not just a felon who illegally armed himself, but one who did so for the specific purpose of confronting the police.[9] However, the majority opinion in Heard was a stark departure from settled law and takes the untenable position that this Court should apply statutes only when it seems fair and sensible to us to do so. The better course is simply to overrule Heard now, before it becomes any more entrenched. Accordingly, we hereby overrule Heard and restore the law to its pre-Heard condition.[10] It follows that

[8] It is worth noting that the special concurrence does not even try to support the reasoning of the Heard majority.

[9] Our prior cases distinguishing Heard, however, have not looked to the particular facts of the case but rather the general type of felony the defendant was committing at the time of the killing. See Smith, 290 Ga. at 771-772 ("Based on the evidence supporting Smith's participation in a felony drug transaction at the time of the fatal shooting, the trial court was authorized to instruct the jury pursuant to OCGA § 16-3-21 (b) (2) . . . ."); Davis v. State, 290 Ga. 757, 763 (725 SE2d 280) (2012) (same). See also Shivers, 286 Ga. at 428 (Nahmias, J., concurring specially) (discussing "the General Assembly's determination that it is inherently dangerous for a convicted felon to possess a gun," a crime that is punished by a prison term of one to five years even if the possession of the gun does not injure anyone).

[10] We note, as did the dissenting opinion in Heard, that the jury instruction given in that case – "Self-defense is not a defense to felony murder" – is too broad. See Heard, 261 Ga. at 264, n. 4 (Weltner, J., dissenting in part). If the jury finds that the felony allegedly underlying a felony murder charge was justified, then it was not a crime at all, and it could not be the foundation for a felony murder conviction. See Demery v. State, 287 Ga. 805, 809 (700 SE2d 373) (2010) ("[I]f [a

20

the trial court did not err in instructing the jury in the words of OCGA § 16-3-21 (b) (2).

4.     Appellant asserts that he received ineffective assistance of trial counsel. To prevail on this claim, he must show that the performance of his counsel was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See Strickland v. Washington, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). At trial, Appellant was represented by two very experienced criminal defense attorneys, William Morrison and Dwight Thomas, who managed to convince the jury to spare Appellant the death penalty notwithstanding his murdering not one but two police officers. Nevertheless, Appellant contends that his counsel were professionally deficient in failing to object to the trial court's instruction that a person is not justified in using force if he is committing a felony. As explained in Division 3 (b) above, however,

---

defendant] is justified in killing under OCGA § 16-3-21, he is guilty of no crime at all."). See also State v. Green, 289 Ga. 802, 804 (716 SE2d 194) (2011) (affirming the finding that the defendant was immune from prosecution for felony murder based on aggravated assault where he defended himself with a butcher knife, "[b]ecause the trial court was authorized to find that [the defendant] acted in self-defense pursuant to OCGA § 16-3-21"). But whether the underlying felony can be justified turns on the application of the law as expressed in OCGA § 16-3-21.

this instruction tracking OCGA § 16-3-21 (b) (2) was not legally improper. Accordingly, Appellant's ineffective assistance claim fails. See <u>Vergara v. State</u>, 287 Ga. 194, 198 (695 SE2d 215) (2010) ("Counsel cannot be ineffective for failing to make a meritless objection to a proper charge.").

<u>Judgment affirmed. All the Justices concur, except Benham, Hunstein, and Melton, JJ., who concur specially.</u>

BENHAM, Justice, concurring specially.

1. I concur fully with Divisions 1, 2, and 3 (a) of the majority opinion, but I take issue with the decision to overrule *Heard v. State*, 261 Ga. 262 (403 SE2d 438) (1991) in Division 3 (b), and also with Division 4. The proper resolution of appellant's argument that the trial court erred in instructing the jury that "a person is not justified in using force if that person . . . is attempting to commit, is committing, or is fleeing after the commission or attempted commission of a felony," does not require overruling *Heard*. As set forth in detail in the majority opinion, the record reflects appellant affirmatively waived his claim of error

22

based on *Heard* and invited the alleged error. Accordingly, "even where plain error appears, reversal is not warranted if the error was invited by the appellant. *Shank v. State*, 290 Ga. 844, 845 (2) (725 SE2d 246) (2012)." *Shaw v. State*, 292 Ga. 871, 873, n. 3 (742 SE2d 707) (2013).

Because the alleged error was affirmatively waived in this case, we need go no further in analyzing whether *Heard* remains good law. In fact, in my opinion, it is not prudent to overrule a long-standing opinion of this Court when it is entirely unnecessary to do so. Just as Justice Nahmias recognized in his concurrence in *Smith v. State*, 290 Ga. 768, 775-779 (723 SE2d 915) (2012), this Court need not decide whether *Heard* is good law where the case, as here, can be resolved without reaching that issue.

2. With respect to whether we must nevertheless reach the issue of whether *Heard* should be overruled in our analysis of appellant's ineffective assistance of counsel claim, again I say it is not necessary to address this issue. Ineffective assistance of counsel requires both a showing that counsel's performance was deficient, and that, but for the deficient performance, a reasonable probability exists that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80

LE2d 674) (1984). In this case, the only evidence to support a finding of justification is found in appellant's testimony that he shot the officers in self-defense because one of them pulled him to the ground and commenced beating him, and he feared for his life. The testimony of eyewitnesses, however, disputed appellant's account and described that a scuffle between appellant and the officers began when appellant resisted efforts to frisk him. One witness testified he believed appellant was trying to get away from the officers. The testimony of his girlfriend permitted the jury to conclude appellant was carrying a firearm for the express purpose of initiating a shootout with any law enforcement officer who might try to detain him.

The trial court instructed the jury on appellant's justification defense. It also instructed the jury on the statutory exception to the justification defense, to which trial counsel did not object. Even if that instruction was erroneous and counsel's failure to object constituted deficient performance, appellant failed to demonstrate that, but for counsel's failure to object, a reasonable probability exists that the result of the trial would have been different. The jury was not required to accept appellant's testimony that he was rightfully resisting arrest or that he was justified in shooting the officers. See *Murray v. State*, 295 Ga. 289,

292 (1) (759 SE2d 525) (2014); *Allen v. State*, 290 Ga. 743, 744 (1) (723 SE2d 684) (2012). Of course, it is for the jury, and not this Court, to determine the credibility of witnesses and resolve conflicts or inconsistencies in the evidence. See *Grissom v. State*, 296 Ga. 406 (1) (768 SE2d 494) (2015). Here, however, the evidence overwhelmingly disputed appellant's assertion of self-defense, and thus overwhelmingly supported the jury's finding of guilt. See *Hill v. State*, 290 Ga. 493 (722 SE2d 708) (2012) (where evidence of guilt was overwhelming, appellant failed to establish how counsel's failure to seek a jury charge on a defense to the crime would have raised a reasonable probability of a different outcome); *Holsey v. State*, 281 Ga. 177 (637 SE2d 32) (2006) (given overwhelming evidence of appellant's guilt, appellant was not able to show sufficient prejudice from alleged deficient performance of counsel for failing to request an appropriate instruction on receiving evidence of prior convictions in a case involving possession of a firearm by a convicted felon).

If either one of the two prongs of the *Strickland* test is not met, the assertion of ineffective assistance of counsel fails. *Smith v. State*, 296 Ga. 731 (770 SE2d 610) (2015). The enumeration of error alleging ineffective assistance of counsel is without merit as a result of appellant's failure to demonstrate

3

prejudice. Again, it is unnecessary to reach the issue of whether *Heard* should be overruled because it is unnecessary to reach the issue of whether an objection to the instruction, if made at trial, would have been meritless.

I am authorized to state that Justices Hunstein and Melton join in this special concurrence.

Decided March 27, 2015.

Murder. DeKalb Superior Court. Before Judge Coursey.

<u>Jimmonique R. S. Rodgers, Long D. Vo, Christopher R. Geel</u>, for appellant.

<u>Robert D. James, Jr.</u>, District Attorney, <u>Anna G. Cross</u>, Assistant District Attorney, <u>Samuel S. Olens</u>, Attorney General, <u>Patricia B. Attaway Burton</u>, Deputy Attorney General, <u>Paula K. Smith</u>, Senior Assistant Attorney General, <u>Meghan H. Hill</u>, Assistant Attorney General, for appellee.