302 Ga. 207
FINAL COPY

S17A1170.  SMITH v. THE STATE.

GRANT, Justice.

Appellant Luther Smith, Jr., was convicted of felony murder and other crimes in connection with the February 2007 death of 15-month-old Deandra Turner.  Smith now appeals, asserting insufficiency of the evidence and erroneous admission of expert testimony.  Because the evidence was sufficient to enable a jury to determine that Smith was guilty of the crimes of which he was convicted, and because the testimony in question was admissible, we affirm.[1]

I.

---

[1] The murder was committed on February 14, 2007.  Smith was indicted by a Fulton County grand jury.  At the conclusion of a trial held March 17-26, 2009, a jury found Smith guilty of felony murder and other crimes, and he was sentenced to life imprisonment.  Smith filed a timely motion for new trial on April 3, 2009.  A hearing was held on the motion on August 2, 2016, and the motion was denied on August 15, 2016.  Smith filed his notice of appeal on September 13, 2016.  The appeal was docketed to the April 2017 term of this Court and thereafter was submitted for a decision on the briefs.

Viewed in the light most favorable to the jury's verdict, the evidence at trial showed as follows. On February 14, 2007, Shakela Turner left her two young daughters, three-year-old Shamyra and fifteen-month-old Deandra, in the care of Smith, her boyfriend, while Turner went to work. After Turner's shift ended in the early evening, she returned briefly to her apartment where Smith was watching the girls to retrieve her EBT card before going grocery shopping. When Turner arrived at the apartment, it took longer than normal for Smith to open the door; when he answered, Turner noticed that he was sweating. Smith told Turner that Deandra was upstairs sleeping, and Turner departed for the store.

After Turner left, Smith went to his grandmother's home, which was in the same apartment complex, to get some laundry detergent. When Smith returned to Turner's apartment, he was with his cousin, Darnell Lawrence, and a friend, Samuel Davis. Deandra was lying face down on the sofa when they entered the home; Smith picked her up and took her upstairs while Lawrence and Davis settled down to watch TV. Smith called Davis upstairs to look at Deandra. Although she felt warm to the touch, Deandra appeared not to be breathing, so Davis began administering CPR. Smith, too, attempted CPR. During these attempts, a small amount of blood trickled

from Deandra's nose. The men took Deandra downstairs, where Lawrence told them to call 911. Smith ignored that instruction, and instead called Turner and asked her to hurry home.

When Turner arrived back home, she jumped out of the car and ran to Smith, who was carrying Deandra. She asked him what had happened, but he claimed ignorance. Turner called 911 and attempted to follow the operator's instructions for CPR, but was too distraught to do so. A neighbor who noticed the commotion intervened, performing CPR until paramedics arrived.

When paramedics arrived, Deandra had no pulse and was not breathing. As Turner ran to the ambulance, Smith followed, asking her if she was going to break up with him. Smith then approached a paramedic and reported that Deandra had choked on a vitamin or a piece of candy earlier that evening and had become unresponsive.

At the hospital, Smith falsely told the social worker that he had left Turner's children in the care of his 12-year-old sister for some period during the day. Smith also claimed that when he returned, he discovered that Deandra was choking and pressed on her stomach to expel the hazard; he claimed that he then put Deandra to bed because she seemed "woozy"

afterward. After his sister denied this account, however, Smith admitted that he had lied about leaving the children with her.

At the time of Deandra's arrival at the hospital, an emergency room nurse recorded Deandra's body temperature as approximately 91 degrees Fahrenheit. Deandra was pronounced dead approximately one hour later.

In a statement to investigators, Smith claimed that sometime between 6:30 and 7:00 p.m., Deandra had choked on a piece of candy; that he had dislodged the candy by pressing lightly on her stomach; that he had disposed of the candy in a trash bag in the kitchen; that he had put Deandra to bed after the choking incident; and that, when he later checked on Deandra, he found her unresponsive. In the later search of Turner's apartment, investigators found no candy in any garbage receptacles. Investigators did find several articles of blood-stained clothing in the washing machine — clothing that included an adult-sized T-shirt that was stained with blood matching Deandra's DNA and an outfit that Deandra had been wearing earlier in the day, which, according to Turner, had been clean that morning. Investigators also found a blood-stained blanket in Deandra's crib.

At trial, the medical examiner opined that the cause of death was blunt force trauma to the head, and, secondarily, blunt force trauma to the

abdomen.  The autopsy revealed numerous small bruises on Deandra's head and face, a subarachnoid hemorrhage in the brain, and multiple hemorrhages in the retinas, neck muscles, right kidney, and stomach.  There was also a substantial amount of blood present in Deandra's abdominal cavity, her liver was lacerated, and she had a broken rib.  All of these injuries were signs of significant trauma and force.  Though there were indications of an earlier brain injury — and, indeed, there was trial evidence that during the weeks preceding her death, Deandra had been struck in the head by a football and had fallen down some stairs — the medical examiner opined that any prior injuries had not contributed to Deandra's death, and that the fatal brain hemorrhage had occurred at or around the time of death.

The State's child abuse expert, Dr. Randall Alexander, testified that Deandra's injuries were consistent with abusive trauma rather than accidental trauma.  His opinion was based on the evidence of multiple impacts to Deandra's head from different angles, the fact that the bruising had necessarily occurred while her heart was still beating rather than during life-sustaining medical intervention, and the fact that the retinal hemorrhaging and abdominal bleeding were necessarily products of forceful shaking or

other intentional impact. Dr. Alexander opined that none of the injuries were consistent with choking on a piece of candy.

The defense presented two experts. The first testified that Deandra was repeatedly hospitalized during her short life for various infections and that her brain hemorrhage could have been caused by a parasitic infection or a blood clot disorder. The second defense expert opined that increased intracranial pressure from brain swelling or a lack of oxygen due to choking could have caused Deandra's retinal hemorrhages.

As we have explained, "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) (citation and punctuation omitted). Contrary to Smith's contention, the evidence described above was sufficient to enable a rational jury to conclude beyond a reasonable doubt that Smith was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

## II.

Smith asserts that the trial court erred in permitting the prosecutor, over objection, to elicit testimony from the State's expert that in his opinion the

victim's injuries were the result of abuse rather than accident. Smith argues that this testimony was inappropriate and inadmissible because it invaded the province of the jury and went to the ultimate issue of fact in the case. We disagree.

The State's expert, Dr. Alexander, was qualified as an expert in the fields of child abuse, child fatalities, and pediatrics. Dr. Alexander testified that based on his review of documents — which included the autopsy report, medical records, and photographs of Deandra — he observed, among other things, multiple sharp-line bruises on different sides of Deandra's head, subarachnoid and retinal hemorrhaging, and abdominal and chest injuries, which included a rib fracture, a lacerated liver, and bleeding in the abdomen. Dr. Alexander testified that these observations were consistent with multiple, high-speed impacts, shaking, blunt force trauma like punching, kicking, or stomping, and violent, repeated abuse. He further testified that what he observed was neither consistent with life-sustaining medical intervention such as CPR, nor with Smith's claim that Deandra had choked on a piece of candy. Dr. Alexander concluded based on these observations that it was his expert opinion that the cause of Deandra's death was "consistent with being abusive head trauma. It did not appear accidental."

Smith's claims that these conclusions should not have been offered to the jury are inconsistent with our prior rulings. In *Dyer v. State*, 295 Ga. 173, 177 (758 SE2d 301) (2014), we made clear that a qualified expert may provide opinion testimony as to whether a victim's injuries were consistent with abuse or accident. This type of testimony does not invade the province of the jury because the ultimate question for the jury was not the cause of Deandra's injuries, but whether Smith was criminally responsible for those injuries and, ultimately, her death. Id. at 177-178 (citing *McFolley v. State*, 289 Ga. 890, 892 (717 SE2d 199) (2011)).[2] And such testimony necessarily remains admissible even when the defendant argues, as Smith did, that the victim's injuries must have resulted from some unfortunate accident or accidents. See, e.g., *McFolley*, 289 Ga. at 893. Were that not so, then defendants would also be blocked from offering expert testimony that a victim's injuries were consistent with an accident, rather than from abuse; there is plainly no such limitation.

Here, as in similar cases, the question of whether Deandra's accidents could have produced the types of injuries she suffered "requires the training of an expert to answer based on distance, force, brain trauma, etc. — a

---

[2] *Dyer* was decided under our old Evidence Code. Opinion testimony embracing the ultimate issue to be decided is now governed by OCGA § 24-7-704.

complicated calculus based on biology, anatomy, and physics. There is no question that this difficult determination based on medical knowledge and training is beyond the ken of the jury," making expert testimony on the issue of abuse versus accident admissible. McFolley, 289 Ga. at 893. Accordingly, Dr. Alexander's testimony that Deandra's injuries were consistent with abuse was admissible, and the trial court did not abuse its discretion in permitting Dr. Alexander's opinion.

Judgment affirmed. All the Justices concur.

Decided October 2, 2017.

Murder. Fulton Superior Court. Before Judge Campbell.

Dell Jackson, for appellant.

Paul L. Howard, Jr., District Attorney, Kevin C. Armstrong, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.