## LUMPKIN *v.* THE STATE.

No. 8833. FEBRUARY 20, 1933.

*W. H. Trawick* and *M. B. Eubanks,* for plaintiff in error.

*George M. Napier, attorney-general, S. W. Ragsdale, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

ATKINSON, J.   Thad Lumpkin was placed on separate trial under a joint indictment charging him and Percy Carter with the murder of Will Wester by shooting him with a gun.   The jury returned a verdict finding the defendant guilty and recommending mercy of the court.   A motion for new trial was overruled, and the defendant excepted.   The evidence showed, without contradiction, that Thad Lumpkin, Percy Carter, and two others went off at night in an automobile (a Dodge Sedan), to procure and transport a quantity of liquor.   The automobile was the property of Lumpkin, as was also a loaded shotgun and several extra shells and an unloaded pistol, placed in the car at the beginning of the expedition by Lumpkin. One phase of the evidence was that these weapons were carried "to trade for liquor," while another was that they were carried for "the purpose of running a bluff, bluffing this liquor."   They obtained through theft, or a process of "hijacking," twenty gallons of liquor late at night, and were transporting it in the car, when they saw the headlights of another car some distance in front of them.   When they approached within about thirty feet of the other car they found that it was parked in the road, and they stopped, the lights of both cars being turned on and facing each other.   The second car was that of officers Tolbert and Wester, who, anticipating the capture of a different car, had parked and were waiting for it to come along. When the first-mentioned car stopped, the officers saw that it was not the car they were looking for, but became suspicious and started to investigate.   At this stage the accounts of what happened differ. The theory of the State was that as the officers were approaching, without a word having been spoken or any show of force having been made, a shot was fired from the shotgun by a man from within the liquor car, aimed at and wounding Tolbert in the legs and causing him to fall; that the same man changed his position and fired the gun at Wester, striking him in the chest; that about the time of the second shot Wester fired two shots with his pistol at the man, and Tolbert fired at him also; that Wester died immediately after firing; that all the men in the liquor car fled; that Lumpkin returned and undertook to drive his car away, but could not get it to move; that he started off again, and was wounded by Tolbert, but

nevertheless escaped. The theory of the defense was that the agreement was confined to acquisition and transportation of liquor, and did not extend to the taking of life; that Lumpkin was sitting with one of the other men on the rear seat, while Percy Carter was on the right front seat with the driver on his left; that when they stopped they saw Tolbert and Wester approaching with their guns, and before a word was said the officers opened fire and shot at them several times; whereupon Percy Carter seized the shotgun which was carried between him and the driver, and fired the two shots at the officers, with the results as stated above. Referring to the time when the liquor car approached and stopped, Tolbert testified, in part: "We sat in the car for a minute or a minute and a half before there was ever any move made. . . There was never a word spoken by either side. We discovered that it was not the car we were looking for. . . Then I told Wester let's see who they were or what they wanted. I got out on the right-hand side of the car, and Mr. Wester was on the left. . . I stopped a few steps in front of the front wheel of our car. . . At that time there had never been a word spoken between us and the parties in the Dodge Sedan. We did not draw any weapons at all. I had not even touched the gun in my holster, . . but Mr. Wester . . I never saw his gun, but I saw his flashlight; he had his flashlight. . . He did not say a word to indicate he was going to harm or hurt them; he never had spoken." At this point the witness related that the man commenced to shoot from the car, as stated above. On cross-examination the witness stated: "We did not intend to make any arrests unless we had found liquor. . . I intended to make an arrest if it was necessary." Percy Carter testified, in part: He was riding on the front seat with the driver and on which were the gun and the pistol. Lumpkin was on the back seat. "We got up something like the distance from here to the back of the court-room from that car that was parked. We had to stop then; there was two men out in the middle of the road, one of them coming down the road meeting us, with guns in their hands, and the boy started to back up. I shot when the car was coming back. Mr. Wester and Mr. Tolbert, the officers, that's what they say their names was, I didn't know them that night; they were coming down the road and the car going back, and when the car started back they tore out running, and the man on the right

throwed his gun up and shot, and about the same time the other one shot. I had not shot up to that time. I pulled the gun out from between me and the driver and pulled it through the glass of the door and shot the man on my right, and then shot the other one. The car was going back. . . After the car stopped I jumped out and ran. . . Thad Lumpkin did not shoot. . . Thad Lumpkin did not tell me to shoot anybody; there was not a word said about it. . . There was no agreement between any of us that I was to shoot anybody."

1. A conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act. This agreement may be established by direct proof, or by inference, as a deduction from conduct, which discloses a common design on the part of the persons charged to act together for the accomplishment of the unlawful purpose. *Tanner* v. *State,* 161 *Ga.* 193 (11) (130 S. E. 64). Where several persons conspire to engage in the unlawful acts of possessing and transporting intoxicating liquors in this State, and in pursuance of the common design one of the conspirators furnishes an automobile in which a loaded shotgun and several extra shells are placed, and all the conspirators enter the automobile and on the proposed expedition after acquiring possession of the liquors, and while they are engaged in the transportation they are confronted by an officer of the law, and one of them other than the one who furnished the automobile, while seated in the automobile with all the others, in furtherance of the design to transport the liquors, takes up the gun from where it is being carried and shoots and kills the officer as he is approaching the car and before he has spoken to them, such killing is the probable consequence of the unlawful design to possess and transport the liquors, and all the conspirators are guilty of murder, including the proprietor of the automobile. It is not necessary that the crime of murder should be a part of the original design, but it is enough if it be one of the incidental, probable consequences of the execution of their design and should appear at the moment to one of the participants to be expedient for the common purpose. The intent of the actual slayer is imputable to his co-conspirators. *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36). See also *Berryhill* v. *State,* 151 *Ga.* 416 (107 S. E. 158). The requests to charge set out in the eleventh, twelfth, and thirteenth grounds

of the motion for new trial do not accord with the principles above stated, as applied to the evidence in the case.

2. Certain requests to charge set forth in the grounds numbered 4, 5, 6, 7, 8, 9, and 10 relate to the right to defend as against illegal search and illegal arrest without a warrant and illegal shooting by an officer to prevent the escape of the defendant and to accomplish his arrest for a misdemeanor. Some of the requests to charge did not state correct principles of law properly adjusted to the evidence and the prisoner's statement before the jury. In so far as any of them stated correct principles of law properly adjusted to the facts of the case, they were covered by the general charge, and such grounds show no cause for new trial.

3. The charge complained of in ground 15, "The crime being a misdemeanor only, an officer has no right to kill one to effect an arrest on a charge of misdemeanor; he has no right to use any force except such as may be necessary to take the party alive and not dead," was not cause for reversal for the reasons as stated, (a) that "if an arrest was attempted and in progress, it was illegal, because the officers did not have any warrant and did not know that defendant and his companions were violating any law;" (b) that "the foregoing charge authorized and instructed the jury that the officer under the facts detailed could use legally any amount of force short of actually killing him, in order to effect an arrest, and that he could legally shoot at him and even shoot him if he did not kill him to effect the arrest;" (c) that "the officers had no right whatever, under the evidence in this case, to either search the car in which defendant was riding or arrest the occupants of the car, and effort to make such search and arrest was illegal, and that the officers could not legally arrest defendant or search his car under the facts of this case, and any show of force in attempting an arrest was illegal, and defendant had a right to resist such arrest with such force as necessary to prevent it;" (d) "that the court, instead of the above charge, should have charged the jury that the officers could not, under the facts of this case, make an arrest nor use any force whatever in attempting to do so."

4. In ground 16 complaint is made of the following instruction to the jury: "In this case the question of a conspiracy you will be instructed on, and I desire to call your attention to the law of conspiracy. A conspiracy is defined as a combination or agreement be-

tween two or more persons to do an unlawful act. The existence of a conspiracy may be established by proof of acts and conduct, as well as by proof of an express agreement. The rule is that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy of one of the conspirators is the act of all, and is subject to the qualification that each is responsible for the acts of others only so far as such acts are actually done or necessarily done in pursuance of and in furtherance of the conspiracy. If a conspiracy has been established to your satisfaction, beyond a reasonable doubt, the acts of one of the conspirators are the acts of all, and each is responsible for the acts of the others only so far as the acts are necessarily done in pursuance to or in furtherance of the conspiracy. If two or more persons combine and agree to do an unlawful act of any kind, and the unlawful act is understood by the parties, by two or more of them (and remember, the word 'conspiracy' in law refers only to unlawful acts, conspiring to do an unlawful thing),—in this case, if the defendant and one or more of the others, Percy Carter, Tillman Cowan, and Bunk Carter, formed a conspiracy to come to this county or any place and procure intoxicating liquor and either take it or buy it and carry it away from this county and through the county, and if they conspired and agreed among themselves that [they] would do so at whatever cost and take human life if necessary, if that was by implication shown here beyond a reasonable doubt or by expressed words, then that would be an unlawful conspiracy; and if in carrying out the conspiracy one kill another in the carrying out of the conspiracy, then they would all be guilty of murder. They would be guilty alike, all who participated and were present and wilfully and knowingly and feloniously acting in furtherance in carrying out the conspiracy. I charge you that rule of law, so that you may better understand a further rule that I will charge you. During or after the forming of the conspiracy and during the pendency of the criminal project, and before the entire crime has been committed, the sayings of any one of the conspirators would be admissible in evidence against all; but after the crime has been committed and the criminal project is ended, then the sayings of the other conspirators would not be admitted as evidence, and you would not consider that against the defendant on trial." This charge by the court was not cause for reversal, as contended, for any of the following reasons:

(a) "The evidence did not authorize any charge on the question of conspiracy." (b) The charge "did not correctly state the law of conspiracy and did not fully explain the same to the jury." (c) "The true rule regarding the law of conspiracy is that the conspirators would only be responsible for such acts as are the reasonable and probable consequence of said conspiracy, and the taking of human life is not a reasonable and probable consequence of any conspiracy to purchase liquor and transport the same." (d) "The fact that the conspirators had an agreement to purchase liquor and transport the same through Polk County would not render all the conspirators liable for the taking of a human life by one of the parties to the conspiracy, when said act of taking human life was not a reasonable and probable consequence and in no way entered into said conspiracy." (e) The "charge was not adjusted to the facts of the case; and there was no evidence, either direct or circumstantial, to the effect that the defendant, Thad Lumpkin, conspired in any way to do any act or acts which resulted in the taking of the life of the said Will Wester." (f) "There was no evidence of expressed words; and further, because a conspiracy, as movant contends, can not be established by implication."

5. In ground 17 complaint is made of the following instruction to the jury: "If he knew he was about to be arrested, and if he was not apprised to the fact that the party seeking to arrest him was an officer, if he was not put on full acquaintance and knowledge of the situation and had reason to believe the arrest was illegal, he had a right to resist it, but not to take life." This charge is not entirely accurate, but it does not afford cause for a reversal for the reason, as contended, "that the court in this charge predicated the right to resist the illegal arrest upon the theory that the defendant was not put on full acquaintance and knowledge that the deceased was an officer; and further, because the court limited the right to resist with the words, 'had a right to resist it, but not to take life,' which excluded from the consideration of the jury the evidence and the contention of the defendant that the effort to search and arrest was accomplished with a show of force, violence, and drawn weapons, and an actual shooting."

6. In ground 18 complaint is made of the following instruction to the jury: "Whisky is considered of no value, it is true; but the carrying of whisky through the county, hauling it, is an unlawful

act; and a conspiracy to steal whisky—hijack it as we call it—you would consider as a circumstance showing and illustrating the mind and motive of the defendant and the extent of the conspiracy, and all that." This charge was not cause for reversal for the reasons, as contended, (a) "that it was not adjusted to the facts of the case, and tended to express an opinion on the part of the court to the effect that if the defendant was engaged in hauling whisky, this would be prejudicial to him and could be used by the jury as a circumstance against him;" (b) "that, even if a conspiracy were proved, he would only be responsible for such acts as would be the reasonable and probable consequence of the conspiracy, and that the taking of human life is not a reasonable and probable consequence of an agreement to transport liquor through Polk County;" (c) that "this charge strongly intimated that because the defendant might have been engaged in transporting liquor, such acts might be considered by the jury as a circumstance in determining his guilt; and this charge was unfair and prejudicial to the defendant and an invasion of the province of the jury, because the same contained an intimation of opinion on the part of the court as to what the jury might infer from the circumstances that the defendant was engaged in the transportation of liquor through Polk County."

7. In ground 14 complaint is made of the following instruction to the jury: "An officer in this State may arrest one for a crime committed in his presence, without a warrant. A crime is committed in the presence of an officer if he sees it committed, or by the exercise of any of his senses he has knowledge, together with what he sees, that a crime is being committed by the person sought to be arrested." This charge was not erroneous for the reason, as contended, that it was not authorized by the evidence.

8. The evidence was sufficient to support the verdict, and the judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*