## PRESSLEY *v.* THE STATE.

No. 17082. SEPTEMBER 13, 1950.

*Wilson & Wilson* and *Harry M. Wilson,* for plaintiff in error.
*Eugene Cook, Attorney-General, J. R. Parham, Assistant Attorney-General,* and *Robert E. Andrews,* contra.

HEAD, Justice. ■ Ground 4 of the amended motion for new trial assigns error on the admission in evidence of a certified and authenticated copy of the original dental chart of the deceased from the Bureau of Medicine and Surgery of the Department of the Navy. The objections were that the copy was not duly authenticated; there was no certificate that the certifying officer's signature was genuine, or that the certification was in

proper form; the certification did not comply with the laws of this State with reference to the authentication of a record; there was no statement that the copy is a copy of the record; there was no certificate that E. E. Woods, who signed as Acting Judge Advocate General of the Navy, in fact signed the certificate; and there was no seal annexed.

The certification and authentication objected to was in the following form:

"UNITED STATES OF AMERICA
DEPARTMENT OF THE NAVY
Washington, D. C., 27 June 1949

I hereby certify that the annexed is a true copy of the dental record of Ex-Motor Machinist's Mate William Edmond Edwards, USN, 832 26 51. I do hereby certify that I am custodian of the medical records of all enlisted men who have been discharged from the United States Navy. I do further certify that the record hereto attached is a true and correct copy of the original dental chart of William Edmond Edwards, which is on file in the Bureau of Medicine and Surgery.

[Signed] C. A. SWANSON
Chief of the Bureau of Medicine
and Surgery. (Official title.)

"OFFICE OF THE SECRETARY

I hereby certify that C. A. Swanson, who signed the foregoing certificate, was at the time of signing Chief of the Bureau of Medicine and Surgery and that full faith and credit should be given his certification as such.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of the Navy Department to be affixed this 1st day of July, one thousand nine hundred and forty-nine.

[SEAL]

[Signed] E. E. WOODS
ACTING JUDGE ADVOCATE GENERAL OF THE
NAVY FOR THE SECRETARY OF THE NAVY."

The defendant cites and relies upon *Edmonds* v. *State*, 201 *Ga.* 108 (6) (39 S. E. 2d, 24). The *Edmonds* case is not in point on its facts with the present case, and does not support the contention that the dental chart of the deceased was im-

properly admitted in evidence. As was pointed out in the *Edmonds* case, there is no statute in this State concerning the admissibility of authenticated copies or transcripts of records, papers, or documents from any department or agency of the United States Government. The Code, § 38-601, relates to a certificate by a public officer of the State or of some county in the State. The Code, §§ 38-627 and 38-630, are codifications from U.S.C.A., Title 28, §§ 687 and 688, and relate to public acts, records, and judicial proceedings of other States or territories.

The decision in the *Edmonds* case was written prior to the act of Congress of June 25, 1948, consolidating sections 661-667 and 671 of Title 28, U.S.C.A., the new section being 1733, which provides as follows: " (a) Books or records of account or minutes of proceedings of any department or agency of the · United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept. (b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof."

The certificate in the instant case was signed by C. A. Swanson, as Chief of the Bureau of Medicine and Surgery of the Department of the Navy, and he certifies that "the record hereto attached is a true and correct copy of the original dental chart of William Edmond Edwards, which is on file in the Bureau of Medicine and Surgery." The authentication by E. E. Woods, as Acting Judge Advocate General of the Navy, that "C. A. Swanson who signed the foregoing certificate, was at the time of signing Chief of the Bureau of Medicine and Surgery," is a sufficient verification that the certificate was signed by the Chief of the Bureau of Medicine and Surgery, who was C. A. Swanson.

"Records of public officers are usually made by persons having no motive to suppress or distort the truth or to manufacture evidence, and, moreover, are made in the discharge of a public duty, and almost always under the sanction of an official oath. . . Since the records concern public affairs, and do not affect the private interests of the officers, they are not tainted by the suspicion of private advantage." 20 Am. Jur. 862, § 1023.

The certificate in this case is not objectionable because it was made by E. E. Woods, Acting Judge Advocate General, acting for the Secretary of the Navy. A deputy officer may properly certify for the chief officer nominally having custody, and in point of form the name and title of the superior should be used. 5 Wigmore on Evidence (3rd ed.), 520, § 1633 (8).

On the subject of authentication it is stated in 20 Am. Jur. 836, § 989, as follows: "The methods provided by acts of Congress are not exclusive of any other methods that the states may adopt in their own courts, provided such methods are not inconsistent with the acts of Congress. The state may waive some of the requirements of the Federal acts, but it may not add to those requirements."

The certification and authentication of the dental chart in this case, which purports to be under the seal of the Navy Department (although the imprint of the seal is not entirely clear), is in substantial compliance with the act of Congress of June, 1948 (U.S.C.A., Title 28, § 1733). This State not having provided by statute the manner for the authentication of Federal records, the trial court did not err in admitting a record proved in the manner provided by Federal law. Furthermore, the authentication of the dental chart of the deceased was sufficient to meet the requirements of the common law. Compare 20 Am. Jur. 776, § 922, and citations.

■ Ground 5 of the amended motion for new trial assigns as error the refusal of the trial court to declare a mistrial, on motion of counsel for the defendant, because of a remark made by the solicitor-general, as follows: "I am not taking advantage of him, Your Honor. It shows the reason for making an affidavit · that he knew was false." The motion for mistrial was a follows: "We make a motion for mistrial. The solicitor-general made the statement that the witness has lied from the stand, and the credibility of the witness is a .matter for the jury to determine." It is contended that the statement was improper and prejudicial because it tended to discredit the defendant's witness in the eyes of the jury, and that the testimony of the witness was material and beneficial to the rights of the defendant. The court did not rebuke counsel, nor tell the jury to disregard the statement.

This ground of the motion for new trial is incomplete, in that the movant does not aver anywhere in this ground that the remark of the solicitor-general was not based upon any evidence. Code, § 81-1009. While the law condemns improper remarks and argument of counsel based on extrinsic and prejudicial matters which are not supported by any evidence, in the absence of anything to the contrary, the solicitor's remark will be regarded as his deduction from the evidence. *Floyd* v. *State*, 143 *Ga.* 286, 289 (84 S. E. 971). If the solicitor's deductions were illogical, unreasonable, or even absurd, the matter was one for reply by the defendant's counsel, and not for rebuke by the court. *Owens* v. *State*, 120 *Ga.* 209 (3) (47 S. E. 545).

■ Ground 6 is expressly abandoned. In ground 7 it is contended that the court erred in refusing to exclude the testimony of John Howard Long, who was jointly indicted with the defendant, because Long's testimony was made with the hope of benefit, as indicated by a letter identified by him, in which the witness had stated: "The sheriff came up here and talked to me. He said that he knew for sure that I wasn't going to get the chair. He told me if I got life that I would get out in one year's time, because everyone here was pulling for me."

The rule which excludes the admission of a confession induced by hope of benefit or fear of injury (Code, § 38-411) would not make the oral testimony of Long inadmissible. Any competent evidence tending to show that the testimony of a witness is induced by a hope of benefit is admissible to discredit the witness, but such discrediting evidence does not make the witness incompetent to testify. Compare *Rawlins* v. *State*, 124 *Ga.* 32 (10) (52 S. E. 1).

■ Grounds 8 and 9 assign as error the refusal of the trial court to declare a mistrial for alleged improper remarks to the jury by the solicitor-general in his concluding argument. The alleged improper remarks in their nature are so closely related that these grounds should be considered together.

Ground 9 assigns as error the refusal of the court to declare a mistrial for the following remark by the solicitor-general: "James Pressley was convicted before in this case." While it is alleged in this ground that "there was nothing in the evidence or deducible from the evidence to justify the argument made by

the solicitor general," this assertion is not supported by the record. The witness Wayne Woodruff in testifying for the defendant, on direct examination, testified in part: "The main subject of the conversation [between Pressley and Long] that I overheard at that time was the story of their conviction and evidence at that time. . . Both Jimmy Pressley and John Long had been tried at that time. This conversation took place about two or three weeks after the time they were tried, I would say. Both of them had been given the sentence of death by electrocution." The defendant in his statement to the jury made the following reference to his former trial: "They brung me here and throwed me in the Waycross, Georgia, jail, where I was tried and sentenced on July, I think it was the 26th."

The defendant having injected into his trial, both by his own statement and by the testimony of his witness, on direct examination, the fact of his former conviction, he has no legal basis for complaint that the solicitor-general commented on this fact in his final argument to the jury, and amended ground 9 is without merit.

Ground 8 assigns as error the refusal of the court to declare a mistrial for the following remark of the solicitor-general: "This defendant was convicted on his last trial without the testimony of John Howard Long." There is nothing in this ground to refute the statement of the solicitor-general, in response to the motion for mistrial, as follows: "I want to say this, Your Honor, for the record, that I am answering an argument that was made by counsel whenever he, himself, said that John Howard Long refused to testify a year ago against James D. Pressley because he was afraid he might incriminate himself." The basis for the solicitor-general's comment was laid by the evidence and by the remark of the defendant's counsel, and ground 8 is without merit.

Ground 10 assigns as error the refusal of the court, on written request, to give the following charge: "I charge you that an accessory after the fact is a person, who, after full knowledge that a crime has been committed, conceals it, and harbors, assists, or protects the person charged with or convicted of the crime. I charge you that, if from the evidence you should find that the defendant was not the perpetrator of the

crime, was not an aider or abettor, and was not a conspirator in the crime, but after the crime was committed, if a crime was committed, he concealed it or protected the perpetrator of the crime or assisted him, then the defendant would be denominated an accessory after the fact, and in the event you find such, you could not find the defendant guilty, but your verdict would be not guilty under the indictment for murder."

Whether or not the evidence quoted and set out in this ground, or whether any of the evidence upon the trial, would have authorized the jury to reach the conclusion that the defendant's connection with the crime of murder charged in the bill of indictment was that of an accessory after the fact, the trial court properly refused the request to charge. The crime of being an accessory after the fact is one that is not included within the charge of murder, but is an independent crime which could not be at issue on the charge made. *McCoy* v. *State,* 52 *Ga.* 287; *Ivey* v. *State,* 186 *Ga.* 216 (197 S. E. 322). The court should not instruct the jury on any lesser offense not embraced in the charge made in the bill of indictment. 41 C. J. S. 203, § 389; 23 C. J. S. 859, § 1287; 1 Wharton's Criminal Law, 373, § 285; *Bailey* v. *State,* 153 *Ga.* 413 (112 S. E. 453).

■ We now come to the general grounds of the motion for new trial. On the former appearance of this case this court held that the evidence was sufficient to authorize the jury to find the defendant guilty of murder. *Pressley* v. *State,* 205 *Ga.* 197 (53 S. E. 2d, 106). On the former trial the defendant made a very short statement, as follows: "I have been charged with murder and I am not guilty of the charge. I knew nothing about it until I was arrested at my home in North Carolina where I was living with my wife." In the present case the defendant's statement to the jury covers seventeen pages of the record, and covers a wide range of events leading up to the homicide resulting in the charge of murder against the defendant. After relating much of his association with the other defendant, John Howard Long, the defendant made the following statement: "Well, the boy pulled over to the side of the road and stopped, and Johnny [Long] walked up and opened the door and lifted the seat up and I slipped in the back seat and Johnny throwed his bundle in the back seat with me, and we

rode along a piece and Johnny started asking about his car and all, and asked him what kind of motor it had, and he said, 'You have got a nice upholster job and new paint job,' and all that. I wasn't paying any attention too much. I was looking off side the road. All of a sudden Johnny throwed a pistol on this guy, and I was sitting facing the gun. I was sitting on the back of the driver, and he throwed the gun in both of our faces, and he told him, 'Pull over to the next dirt road you come to, and don't try no funny stuff or I will plug you,' and he didn't say anything, and the boy hit the brakes and he says, 'Go ahead,' and he drove on until he come to some dirt road along the highway. He says, 'This is good enough. Turn off,' and the boy turned off and went down the road, I don't know how far. In fact, I was afraid. I didn't know what it was all about. He said, 'This is good enough right here,' and he told the boy to get out, and the boy slid out of the seat and he slid out beside him, and he looked at me and he says, 'Turn that car around.' I says, 'Wait a minute,' and he throwed the gun in my face and says, 'You do what I say.' Well, I crawled up in the front seat and he went on, and *I drove down the road near about a half mile and I turned the car around and come back,* and Johnny Long was coming across to the road out of the woods with the gun in his hand, and I stopped, and he says, 'Get over,' so I got over and he crawled under the steering wheel and rode back to the highway and started up the highway, and I guess we went about two miles and a half, and Johnny stopped the car on the right-hand side of the road and got out and walked across to the left-hand side of the road where a black puddle of water—it looked like swamp water to me—anyhow, that's where he washed his hands and pulled his shirt off that he had on and wadded it up and threw it in the bushes across the way and come back to the car and put on his dirty shirt that he had changed in before, and he got in the car, and the first service station we come to at the forks of the road up there he stopped and filled the tank up full of gas, and we took off." (Italics ours.)

Independently of numerous other assertions of fact contained in the defendant's statement, the jury was amply authorized from the foregoing extract taken from his statement to reach the conclusion that there was a conspiracy between Pressley and

Long to rob the deceased and to take his automobile. If the present defendant were innocent and blameless in the transaction, he does not undertake to account for, or give any reason for returning to the spot where he says Long committed the murder, after he was a half mile away, beyond any control of Long.

A conspiracy to do an unlawful act may be established "by direct proof, or by inference, as a deduction from conduct, which discloses a common design on the part of the persons charged to act together for the accomplishment of the unlawful purpose." *Lumpkin* v. *State,* 176 *Ga.* 449 (168 S. E. 241). Where a conspiracy to rob by the use of a deadly weapon is shown, and one of the participants in the conspiracy commits murder, the intent of the actual slayer is imputable to his co-conspirators. *Berryhill* v. *State,* 151 *Ga.* 416 (107 S. E. 158); *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36); *Lumpkin* v. *State,* supra.

There was sufficient evidence to establish the corpus delicti, and the evidence supports the verdict of guilty against the defendant. The court did not err in overruling the general grounds of the motion for new trial.

*Judgment affirmed. All the Justices concur.*