304 Ga. 168
FINAL COPY


S18A0147. NALLS v. THE STATE.
S18A0148. BASKIN v. THE STATE.


PETERSON, Justice.

Sean Nalls and Montrella Baskin appeal their convictions for malice murder and other charges stemming from an incident in which William Hughes was killed while attempting to buy drugs.[1] Nalls argues (1) that the trial court

---

[1] Hughes was killed on April 30, 2012. On August 10, 2012, a Fulton County grand jury indicted Nalls and Baskin for malice murder, five counts of felony murder, armed robbery, conspiracy to commit armed robbery, criminal attempt to commit armed robbery, three counts of aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon; Baskin also was charged with two counts of hindering the apprehension of a criminal and fleeing or attempting to elude. At a March 2013 trial, a jury found the defendants guilty of all charges, except they were both found not guilty of two of the aggravated assault charges. The trial court sentenced both Nalls and Baskin to life without parole for malice murder, imposing additional five-year sentences for the firearm counts, consecutive to the murder sentence but concurrent to one another. The court also sentenced Baskin to five years on each of the hindering and fleeing convictions concurrent to his murder sentence. The remaining counts were merged or vacated by operation of law, and no challenge to the trial court's handling of merger issues in the case has been raised on appeal. See Dixon v. State, 302 Ga. 691, 697-698 (4) (808 SE2d 696) (2017). Nalls and Baskin in the spring of 2013 filed motions for new trial, which were later amended. The trial court denied the motions in separate orders entered on February 28, 2017, except to the extent that it vacated Baskin's hindering convictions as mutually exclusive of his murder conviction. Nalls and Baskin filed timely notices of appeal, and their cases were docketed to this Court's term beginning in December 2017 and submitted for decisions on the briefs.

erred by failing to limit a jury instruction on justification as applying only to Baskin and (2) that the instruction was an improper comment on the evidence in violation of OCGA § 17-8-57. Baskin argues that the trial court erred in failing to instruct the jury that it was not permitted to find him guilty of murder as a party to a crime if it found that his participation was limited to being an accessory after the fact, resulting in mutually exclusive convictions for murder and hindering the apprehension of a criminal that all must be vacated as void. Because any error in failing to limit the jury instruction on justification to Baskin did not affect the outcome of the trial and because the instruction did not violate the version of OCGA § 17-8-57 in effect at the time of trial, we affirm Nalls's convictions. And because we overrule our case law that held that murder and hindering convictions are always mutually exclusive, and because the other precedent cited by Baskin does not require the jury instruction he now says should have been given, we find no reversible error on the arguments he raises.

1. *The evidence is sufficient to support the convictions*.

(a) *Evidence presented at trial*

In April 2012, Hughes traveled to Atlanta from Kentucky with Tangerella Bobbitt and Ashley Strickland. Hughes called Carla Stevenson, who lived in

2

Georgia and knew a drug dealer named Melvin Baty, and arrangements were made for Hughes to buy $9,000 worth of cocaine from Baty.[2] Baty's actual plan was to sell Hughes fake drugs with only a small amount of cocaine mixed in, or "flex."

Baty told only two other people — Nalls and Rontavious Hill, both of whom sometimes stayed with him — about the prospective sale. Baty talked to Hill in attempting to procure the flex from him.[3] And Baty told Nalls just before meeting up with Hughes at Baty's apartment that he "had a play . . . to make" but would not need a weapon because he was going to trick the buyer out of his money. Baty told Nalls to come to the apartment so that Baty could repay him $300 he owed. Baty knew Baskin but did not give him advance notice of the planned drug deal.

On April 30, 2012, Hughes, Bobbitt, Stevenson, Strickland, and Baty met at a gas station before driving to Baty's apartment. After the group entered

---

[2] Indicted with Nalls and Baskin, Baty pleaded guilty to aggravated assault with a deadly weapon and conspiracy to distribute drugs. Stevenson also pleaded guilty to a drug-related conspiracy charge.

[3] Police ruled Hill out as a suspect in the shooting because he usually used a wheelchair and because cell phone records indicated he was not in the area at the time of the murder.

Baty's apartment, two other men emerged from inside and fired guns in Hughes's direction. Hughes returned fire. One of the gunmen, who wore a white shirt and brown or camouflage shorts or pants, took Bobbitt's purse. The other gunman, who pointed a gun at Strickland, was taller and heavier than the first. This second gunman was "older," in his late thirties or early forties, with what appeared to be some grey in his hair, and was about five feet eleven or taller — a description a detective testified was consistent with being Baskin (who, his lawyer represented in closing, is six feet four inches tall). This second gunman wore a grey shirt and blue jeans.

None of the women got a good look at the faces of the gunmen; Stevenson dropped to her knees and covered her head, Bobbitt was afraid to look lest the gunmen shoot her and did not remember the face of the man who took her purse, and Strickland was afraid to look even at the gunman who pointed a gun at her and could not remember the faces of either man. None of the three women positively identified Nalls or Baskin as one of the shooters, and Baty did not identify the shooters, either. Strickland, Stevenson, and Bobbitt found Hughes outside, badly wounded; he soon died from his wounds.

One of the gunmen appeared to be limping as the two gunmen left the

4

apartment. A nearby resident saw a bleeding man in a white shirt being helped to a vehicle by a larger man; the resident had not seen the larger man, who also entered the vehicle, walking around the complex parking lot previously. Meanwhile, Baty, who also had been shot, left the apartment and entered a car that Nalls had borrowed from his girlfriend and discovered Baskin at the wheel. Inside the vehicle, Baty also encountered Nalls, who had been seriously wounded by gunshots. Baty and Nalls never discussed how Nalls had been shot. Baty and Baskin did discuss the shooting both then and the following day, and Baskin told Baty to make sure that "everybody knows" that Baty was the victim, as well as warning Baty never to make a "stupid move like that" again.

Later on the day of the shooting, a police officer saw a car matching a description of the one Baskin was driving drop off two men at Grady Memorial Hospital. The officer followed the car and attempted a traffic stop, but the driver fled in the vehicle. The officer pursued the vehicle, then chased the driver on foot after the driver exited his vehicle near Turner Field. The officer's dash-cam video recording shows the driver wearing a red baseball cap, grey shirt, and blue jeans. After losing sight of the driver, the officer recovered the vehicle, which had bloodstains and Bobbitt's purse inside. A resident of a neighborhood near

5

Turner Field identified Baskin in a photo lineup and in court as a man who tried to push his way into her front door that day, "sweating bullets" and claiming that someone was trying to rob him. When he appeared at the woman's door, Baskin wore a grey shirt and red baseball cap, and, at five feet two inches, the woman came up only to Baskin's chest or collar. He also appeared "older" with some grey hair. Other officers determined that both Nalls and Baty arrived at the hospital with gunshot wounds the day of Hughes's death. Camouflage shorts were among Nalls's belongings that officers recovered from the hospital.

Neither Nalls nor Baskin testified at their joint trial. Both stipulated that they were convicted felons. Baskin argued in closing that the State had not proved he ever entered Baty's apartment, contending that he was merely at Baty's apartment complex to visit his son and ended up driving Nalls and Baty to the hospital. Nalls also argued that the State had not proved that he was in Baty's apartment during the shooting and suggested that, if he were there, he was merely present hoping to recover the money he was owed.

(b) *Analysis of sufficiency*

Although neither Nalls nor Baskin challenges the sufficiency of the evidence, it is our customary practice in murder cases to review the record

6

independently to determine whether the evidence was legally sufficient.

(i) *Nalls*

Nalls was one of only two people whom Baty told about the planned meeting with Hughes; police determined the other person was not a suspect. Immediately after the gun battle inside Baty's apartment, Baty encountered Nalls in a vehicle outside, Nalls having been shot. And Nalls presented at the hospital with clothing that matched a description of that worn by the gunman who demanded Bobbitt's purse. We thus conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Nalls was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

(ii) *Baskin*

As for Baskin, his appearance is consistent with a physical description of the second gunman. Baskin's identity as the second gunman also is consistent with the testimony of a resident of Baty's apartment complex who saw a man helping a smaller wounded man to a vehicle outside the apartment. As confirmed by the Turner Field-area resident, it was Baskin who fled from police after the shooting wearing clothing very similar to the description of clothing

worn by the second gunman. The car in which Baskin fled from police contained bloodstains and Bobbitt's purse. Although Baskin was free to argue to the jury that it was mere coincidence that he was at the complex immediately after the gun battle, ready to drive Nalls and Baty to the hospital in Nalls's girlfriend's car, the jury also was free to dismiss this possibility as unlikely given all of the evidence presented. Based on the evidence, the jury was authorized to find that Baskin was guilty of the crimes for which he was convicted.  See Jackson, 443 U. S. at 319.

2. *Nalls's arguments about the trial court's justification instruction are unavailing.*

Nalls makes two related arguments regarding the trial court's charge on justification. He argues both that the trial court committed plain error by failing to limit the charge on justification to Baskin and that the charge constituted an improper comment on the evidence by the trial court. We disagree on both points.

(a)     *The trial court did not commit plain error by failing to limit the charge on justification to Baskin.*

Although his theory of the case did not appear to be one of self-defense,

8

Baskin requested a charge on justification. At the charge conference, Nalls's counsel stated that she did not want the charge to be given. But she did not request any limiting instruction, and she did not object to the charge at the time that it was given. For that reason, Nalls's claim that the trial court erred by failing to limit the charge is subject to review only for plain error. See White v. State, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) (objection voiced at charge conference does not preserve objections to the charge as subsequently given for ordinary appellate review). There are four prongs in the test for plain error.

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citations and punctuation omitted; emphasis in original). In considering whether an appellant has demonstrated that an error in the charge affected the outcome of the trial,

i.e., whether it was harmful under our plain error standard, we review the charge in its entirety. See <u>Alatise v. State</u>, 291 Ga. 428, 430 (2) (728 SE2d 592) (2012).

Whether or not failing to limit this instruction to Baskin constituted clear error, we find that any error did not affect the outcome of the trial, and thus was not plain error. Nalls argues that the trial court's failure to limit the justification charge to Baskin was harmful because the language of the charge presumed that Nalls had committed the shooting, undermining Nalls's defense that he was at most merely present.[4] But we find it highly unlikely that the jury parsed this charge in this way. The charge made abstract statements about the law regarding "the defendant" during a trial involving two defendants, and neither defendant claimed self-defense, a point underscored by the State in its closing argument. And the trial court elsewhere instructed the jury that the State bore the burden to prove beyond a reasonable doubt every material allegation of the indictment

---

[4] The trial court's justification instruction read in part:
      A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself or to prevent the commission of a forcible felony. The State has the burden of proving beyond a reasonable doubt that the defendant was not justified. . . . And the defendant's conduct in this case would not be justified if you find that the force used exceeded that which the defendant reasonably believed was necessary to defend against the victim's use of unlawful force, if any.

and every essential element of the crimes charged and that it was the jury's duty to determine the facts. Given the weakness of inferences that Nalls strains to draw from the abstract language of the charge, it is highly improbable that the result of the trial would have been different had the trial court charged as Nalls contends it should have. Nalls has not shown plain error in the trial court's justification instruction.

(b) *The trial court's justification charge did not constitute an improper comment on the evidence under the former version of OCGA § 17-8-57.*

Turning to Nalls's related argument under OCGA § 17-8-57, the version of that statute in effect at the time of the 2013 trial of this case provided that it was error for any trial judge in a criminal case "to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[5] A jury instruction amounted to a violation of the former version of the statute

_____

[5] The current version of the statute, adopted by the legislature in 2015, is similar to the former version in that respect but limits the scope of appellate review to plain error in cases in which no timely objection was made at trial, unless the comment at issue involves a judge expressing an opinion as to the guilt of the accused. See OCGA § 17-8-57; see also Ga. L. 2015, p. 1050, § 1. We have not yet found it necessary to decide whether the new version of the statute applies retroactively to cases tried before its effective date. See Burney v. State, 299 Ga. 813, 823 (4) n.10 (792 SE2d 354) (2016). Given that we conclude that the justification instruction of which Nalls complains did not violate even the former version of the statute, we do not decide that question today, either.

11

only "when [the] trial court's instruction, considered as a whole, assume[d] certain things as facts and intimate[d] to the jury what the judge believe[d] the evidence to be." Smart v. State, 299 Ga. 414, 423 (4) (788 SE2d 442) (2016) (citation and punctuation omitted).

Again, the trial court here instructed the jury that the State bore the burden of proof and that it was the jury's duty to determine the facts. And the court told the jury that "[b]y no ruling or comment that the court has made during the progress of the trial has the court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of either defendant." Considered in that context, no reasonable jury would have understood the court's abstract statements about the law as intimating that the judge believed that Nalls had shot Hughes. So there was no violation of the former version of OCGA § 17-8-57. See Murray v. State, 295 Ga. 289, 293 (2) (759 SE2d 525) (2014).

3. *Baskin's arguments about the interplay between the hindering and murder charges against him are not cause for reversal.*

In his appeal, Baskin argues essentially that an omission in the trial court's instructions resulted in mutually exclusive verdicts of guilty on both murder and

hindering such that he is entitled to a new trial on both counts. Baskin argues both that (1) the trial court plainly erred when it failed to instruct the jury that it was not permitted to find him guilty of murder as a party to the crime if it found that his participation was limited to being an accessory after the fact, and (2) the trial court erred by vacating his hindering convictions but not his murder conviction. Both of Baskin's arguments rest on the assumption that murder and hindering are always mutually exclusive — that is, a guilty verdict on one count logically excludes a finding of guilt on the other. That assumption is supported by our case law. But a review of that case law reveals that it rests on shaky ground. After a thorough review, we overrule that precedent and reject Baskin's arguments.

(a) *We have made serious missteps in concluding that murder and hindering are always mutually exclusive.*

Our case law holding that murder and hindering are always mutually exclusive is rooted in part in our opinion in Ivey v. State, 186 Ga. 216, 216-217 (197 SE 322) (1938). In <u>Ivey</u>, the defendant was charged with murder — either by committing it directly or, alternatively, as a party to it by aiding and abetting its commission. Id. at 218. A review of the record in <u>Ivey</u> makes clear that the

13

defendant was not charged with being an accessory after the fact. In response to a jury question, the trial court nonetheless charged the jury on what it means to be an accessory. Id. at 219. In his motion for new trial, the defendant cited as error the trial court's instructing the jury on what it means to be an accessory notwithstanding that the defendant was not charged with being an accessory after the fact and thus a finding of guilt on that crime was not a possible verdict. In reversing the defendant's murder conviction, we stated that the statutory definition of accessory after the fact found in the Code at the time "eliminates the idea of participation by a person guilty of such offense in the perpetration of the major crime[.]" Id. at 216. The statute Ivey interpreted read: "An accessory after the fact is a person who, after full knowledge that a crime has been committed, conceals it, and harbors, assists, or protects the person charged with or convicted of the crime." Id. (quoting former Code § 26-604). We concluded that the conviction must be reversed because the trial court charged the jury on accessorial liability without also telling the jury that the defendant could not be convicted as an accessory after the fact under an indictment for murder. Id. at 217. In other words, the trial court invited a guilty verdict on murder — the only charge at issue — based on a finding that the defendant was

14

merely an accessory after the fact.

Thirty years after we decided <u>Ivey</u>, the legislature overhauled the state's Criminal Code. See Ga. L. 1968, p. 1249. The "accessory after the fact" statute interpreted in <u>Ivey</u> was not carried over into the new Code. The new Code did contain a section prohibiting hindering the apprehension or punishment of a criminal, providing that a person is guilty of such crime when he, "with intention to hinder the apprehension or punishment of a person whom he knows or has reasonable grounds to believe to be guilty of a felony . . . harbors or conceals such person; or . . . conceals or destroys evidence of the crime. . . ." Id. at pp.1312-1313, §1 (former Code § 26-2503).[6] The hindering statute in effect today is identical in all material respects. See OCGA § 16-10-50 (a).

We referenced the modern hindering statute in <u>Moore v. State</u>, 240 Ga. 210 (240 SE2d 68) (1977),[7] a case about when a witness is considered an

---

[6] A prior statute, Code § 26-4601, provided that "[a]ny person who shall receive, harbor, or conceal any person guilty of a crime punishable by death or imprisonment and labor in the penitentiary, knowing such person to be guilty, shall be deemed an accessory after the fact[.]" A separate provision, Code § 26-604, contained the accessory after the fact language interpreted in <u>Ivey</u>. See <u>Moore v. State</u>, 94 Ga. App. 210, 211-212 (1) (94 SE2d 80) (1956).

[7] <u>Moore</u> was overruled on other grounds by <u>Jarrett v. State</u>, 265 Ga. 28, 28-29 (1) (453 SE2d 461) (1995).

15

"accomplice" whose testimony must be corroborated under the precursor statute to OCGA § 24-14-8. In Moore, the appellant argued that the testimony of a state's witness should have been excluded for lack of corroboration because the witness, having helped count money stolen in a robbery, was an accomplice to the robbery. 240 Ga. at 211 (1). We rejected that argument on the basis that, at most, the witness was guilty of hindering. Id. One guilty of violating the hindering statute "would be classified as an 'accomplice after the fact' at common law," we explained, adding that "such an offender is not considered an 'accomplice' within the meaning of [the corroboration statute] or a 'party to the crime' under [the statute defining that term]." Id. (citations omitted). So far, so good. But then Georgia case law began to go awry.

Despite the intervening statutory overhaul subsequent to Ivey, our Court of Appeals in 1987 relied on Ivey and Moore to conclude that a hindering conviction could not coexist with a conviction for the underlying offense. See Thaxton v. State, 184 Ga. App. 779, 780-781 (1) (362 SE2d 510) (1987). The Court of Appeals correctly cited Moore for the premise that "the crime of hindering the apprehension of a criminal is not included within the crime of murder[.]" Id. at 780 (1). Thaxton then cited OCGA § 16-10-50 for the

16

definition of hindering and quoted Ivey for the proposition that "'[t]his definition eliminates the idea'" that a person guilty of hindering also participated in the major crime as a party to the crime. Id. But, of course, the statutory definition considered in Ivey was not the statute at issue in Thaxton; the Thaxton court did no analysis at all regarding the actual statute it purported to consider. Having found sufficient evidence to sustain the defendant's voluntary manslaughter conviction, the appellate court reversed his hindering conviction. In so doing, the court also failed to consider whether the principle that being an accessory after the fact does not make one a party to the crime was appropriate to invert; whether a person is a party to the crime simply by being an accessory after the fact is not necessarily the same question as whether a party to the crime can also be found guilty of accessorial liability.

Faced with a similar scenario in the murder context, we relied on Thaxton and repeated at least one of its mistakes. See Jordan v. State, 272 Ga. 395, 396-397 (2) (530 SE2d 192) (2000). In Jordan, the appellant was convicted of both murder and hindering, and we reversed on the basis that the hindering conviction must be set aside as mutually exclusive. Id. Citing Moore, we suggested that, under the common law, an accessory after the fact was not

17

considered a party to the crime. Id. at 397 (2). We baldly equated liability as an accessory after the fact with liability under our hindering statute. Id. And, just as the Thaxton court did, we cited Ivey for the notion that liability under our hindering statute "eliminates the possibility that one guilty of hindering participated as a party to the crime in the perpetration of the major crime." Id.

We have since repeatedly reaffirmed our holding that convictions for murder and hindering cannot coexist. See Harvey v. State, 300 Ga. 598, 602 (1) (c) (797 SE2d 75) (2017); Young v. State, 290 Ga. 392, 396 (5) (721 SE2d 855) (2012); Hampton v. State, 289 Ga. 621, 622 (2) (713 SE2d 851) (2011); Stanton v. State, 274 Ga. 21, 22 (2) (549 SE2d 65) (2001); State v. Freeman, 272 Ga. 813, 815 (2) (537 SE2d 92) (2000). Our subsequent applications of the rule set forth in Jordan have not offered additional reasoning for its conclusion. And we have held that the proper remedy when a jury returns guilty verdicts on both murder and hindering is to vacate the hindering conviction alone. See Hampton, 289 Ga. at 622-623 (2); Stanton, 274 Ga. at 22 (2); Jordan, 272 Ga. at 397 (2).

There were several problems with this analysis that we performed in Jordan and reaffirmed subsequently. Even if it is true that, at common law, liability as an accessory after the fact did not by itself make one a party to the

18

crime,[8] that premise does not support the inverse conclusion we reached in Jordan that one who is guilty of the primary offense based on a particular set of facts could not also be guilty of hindering the apprehension of another party to that primary offense. And Moore did not hold that one who is guilty of hindering the apprehension of the perpetrator of a given crime could never also be guilty of that crime as a party thereto. Moore holds simply that mere guilt of the crime of hindering does not by itself make one a party to the primary crime (such that the rule of corroboration applies to that person's testimony).

And to the extent that Ivey suggested that guilt as an accessory after the

---

[8] It's not at all clear that this was actually a correct statement of the common law that applies in Georgia. In 1784, the Georgia General Assembly adopted by legislative act the common law of England as it existed "on May 14, 1776." See OCGA § 1-1-10 (c) (1) (leaving in full force the adoption of the common law of England as of May 14, 1776); see also Prince's 1822 Digest, p. 570; Cobb's 1851 Digest, p. 721. It may well be that in 1776, accessories after the fact were formally subject to the same punishment as the principal offender; the only difference was accessories were entitled to benefit of clergy even when principals were not. See 4 William Blackstone, Commentaries on the Laws of England 39 (Robert Bell ed., 1772) ("though by the ancient common law the rule is as before laid down, that both shall be punished alike, yet now by the statutes relating to the benefit of clergy a distinction is made between them: accessories *after* the fact being still allowed the benefit of clergy in all cases; which denied to the principals, and accessories *before* the fact, in many cases" (emphasis in original)). English law was changed in the 1800s to provide that accessories were guilty only of a separate lesser crime, see 2 Wayne R. LaFave, Substantive Criminal Law § 13.6 (a) & n. 36 (3d ed.), but coming after our adoption of the common law, such subsequent changes in England would not have affected our law. Given the statute we consider today, however, we need not resolve such common law questions.

19

fact somehow *excludes* the possibility that one is a party to the primary crime, it did so based on language not found in our current hindering statute. The text interpreted by the Court in <u>Ivey</u> may well have been incompatible with application to one who is a party to the primary crime: the statutory phrases "after the fact" and "after full knowledge that a crime has been committed," as well as distinguishing the accessory from "the person charged with or convicted of the crime," all point to someone who is not involved in the underlying crime itself. But none of that language is in our current hindering statute. See OCGA § 16-10-50 (a). Thus, <u>Ivey</u>'s interpretation of the language from the former Code section is irrelevant to the question posed to us in <u>Jordan</u>: whether a conviction under our current hindering statute can logically coexist with a conviction for murder. But it appears that we carried forward the principle articulated in <u>Ivey</u> without considering critically its applicability to the language of the relevant statute. And "it is always risky for courts to rely on a precedent interpreting a statute or other legal text without first examining whether the legal text on which the precedent was based has been revised and then considering the effect of any such change." <u>Stratacos v. State</u>, 293 Ga. 401, 408 (2) (b) n.10 (748 SE2d 828) (2013).

There is nothing in the text of our hindering statute requiring the conclusion that a hindering conviction can never coexist with a conviction for the primary crime. OCGA § 16-10-50 speaks of hindering the apprehension or punishment of "*a* person" the defendant knows or has reason to believe has committed a crime; it does not refer to hindering the apprehension of "*the* person" who committed the crime. There is nothing in the statute that precludes a conclusion that a person who was a party to the primary crime may also be guilty of the separately charged crime of hindering, where the evidence shows that person has hindered the apprehension or punishment of another person who also is a party to that crime. To conclude otherwise would read into the statute an element — that the defendant was not a party to the primary crime — that is not present.[9]

---

[9] We are not alone in finding ourselves having to clean up our precedent on this point. Several years ago, the Supreme Court of Alabama overruled its own state's precedent that had provided no one who is a principal in the underlying criminal conduct can also be convicted of hindering the prosecution of another who also committed that underlying crime. See State v. Kelley, 190 S3d 37, 42 (Ala. 2014). Similar to missteps made by us on this point, Alabama's Court of Criminal Appeals had extended a prior holding that hindering is not a lesser included offense of the underlying criminal conduct because one cannot be charged with hindering his or her own prosecution, to conclude that a hindering charge is always incompatible with a charge on the primary crime. Id. at 40. The state Supreme Court concluded that this extension was unwarranted under the language of Alabama's hindering statute:

Whether the accused *also* participated in the underlying criminal

21

(b) *Stare decisis does not counsel us to retain our erroneous precedent.*

Before we overrule our incorrectly decided case law on this point, we must consider whether stare decisis counsels us not to.

> Under the doctrine of stare decisis, courts generally stand by their prior decisions, because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. Stare decisis, however, is not an inexorable command. . . . In reconsidering our prior decisions, we must balance the importance of having the question *decided* against the importance of having it decided *right*. To that end, we have developed a test that considers the age of precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning.

Olevik v. State, 302 Ga. 228, 244-245 (2) (c) (iv) (806 SE2d 505) (2017) (citations and punctuation omitted; emphasis in original).

---

conduct is not addressed by the Code section, and there is no language preventing the prosecution of one who hindered prosecution of another if he or she also participated in the underlying conduct. . . . As long as the one accused of hindering prosecution renders criminal assistance to *another*, nothing in the language of the Code section prevents his or her prosecution, even if the accused's criminal assistance *also* ultimately resulted in rendering criminal assistance to himself or herself.

Id. at 42 (emphasis in original). Alabama's hindering statute is somewhat similar to ours. See Ala. Code § 13A-10-43 (a) ("A person commits the crime of hindering prosecution in the first degree if with the intent to hinder the apprehension, prosecution, conviction or punishment of another for conduct constituting a murder or a Class A or B felony, he renders criminal assistance to such person."); see also Ala. Code § 13A-10-42 (defining "criminal assistance").

22

As set forth above, the soundness of the precedent's reasoning weighs strongly in favor of discarding it. Our prior precedent to the effect that hindering and murder are always mutually exclusive misapprehended prior case law and did not consider the language of the pertinent statute. Where we have misinterpreted a statute by failing to consider the statute's language at all, stare decisis applies with less force. See Woodard v. State, 296 Ga. 803, 813-814 (3) (b) (771 SE2d 362) (2015) (overruling precedent that disregarded language of statute and applied no canons of statutory construction); see also Patterson v. State, 299 Ga. 491, 516 (4) (789 SE2d 175) (2016) (Blackwell, J., dissenting) ("[I]f we have made our best effort [at statutory interpretation], it may be more appropriately left to the General Assembly to set things right. But before we call it a day and declare our judicial work at an end, we ought to try at least once to undertake the sort of careful textual analysis (including a consideration of relevant context) that, if done properly, would reveal the most natural and reasonable understanding of the statute."); Harrison v. McAfee, 338 Ga. App. 393, 402 (2) (c) (788 SE2d 872) (2016) ("[B]ecause our prior error involved an incorrect interpretation of a statute enacted by a co-equal branch of government, rather than, say, our own pronouncement on matters of judge-made law,

23

separation of powers considerations counsel in favor of reaching the correct decision, even if it means reversing course, lest we fail to apply faithfully the law as enacted by the legislative branch.").

This leaves only the age of the precedent, the reliance interests at stake, and the workability of the decision. Jordan is 18 years old; we have overruled erroneous statutory interpretations older than that. See Woodard, 296 Ga. at 808-814 (3) (overruling 24-year-old interpretation of justification defense statute); State v. Jackson, 287 Ga. 646, 659-660 (5), (6) (697 SE2d 757) (2010) (overruling nearly 29-year-old interpretation of felony murder statute); Durrence v. State, 287 Ga. 213, 216 (1) (a) n.5 (695 SE2d 227) (2010) (overruling 26-year-old interpretation of insanity defense statute). Our precedent on this point affects no property or contract issues, establishes no substantive rights, and does not involve the sort of reliance interests usually recognized in the stare decisis analysis. See Jackson, 287 Ga. at 658-659 (5). And workability offers no reason to persist in our erroneous statutory construction. We therefore overrule the decisions of this Court and the Court of Appeals to the extent they have suggested that one can never be convicted of both hindering and murder.

(c) *Baskin's arguments do not warrant reversal.*

24

Returning then to the specific arguments that Baskin makes, we conclude that the authority he cites does not require the trial court to have instructed the jury that it was not permitted to find Baskin guilty of murder as a party to the crime if it found that his participation was limited to being an accessory after the fact. Moreover, having concluded that guilty verdicts on both murder and hindering were not impermissible on the facts presented here, we reject Baskin's suggestion that the trial court needed to have told the jury otherwise. We also conclude that, irrespective of what the proper remedy for mutually exclusive verdicts is, Baskin cannot obtain relief on the basis that the trial court employed the incorrect remedy, because the verdicts here were not in fact mutually exclusive.

Baskin argues that the trial court plainly erred when it failed to instruct the jury (sua sponte) that the jury was not permitted to find Baskin guilty of murder as a party to the crime if it found that his participation was limited to being an accessory after the fact. In making this argument, Baskin relies on our case law to the effect that murder and hindering are always mutually exclusive, saying the jury should have been instructed such that it was "forced to choose between convicting Baskin as a party to the crime of murder *or* as an accessory after the

25

fact." But, understanding that hindering and murder are not always mutually exclusive charges, the facts did not require the jury to make such a choice. Here, the evidence presented at trial entitled a reasonable jury to conclude that Baskin (1) was one of the gunmen who shot at Hughes and (2) subsequently hindered the apprehension of Baty and Nalls by driving them from the scene of the crime. There is no legal or factual reason why the jury could not arrive at both of those conclusions. Applying the proper analysis, it would not have been a correct statement of the law to tell the jury that it had to choose between convicting Baskin of murder and convicting him of hindering.

Baskin relies on <u>Ivey</u> for the proposition that the trial court committed plain error by not instructing the jury sua sponte that a defendant is not guilty as a party to a crime if his participation is limited to being an accessory after the fact.[10] But <u>Ivey</u> does not require such an instruction. As was discussed above, in <u>Ivey</u>, the defendant was charged with murder alone, not being an accessory

---

[10] Of course, it *is* a correct statement of the law that a defendant is not guilty as a party to a crime if his participation is limited to being an accessory after the fact. But although the trial court did not instruct the jury in the exact language Baskin now argues was required, the charge *did* cover in substance that concept. In particular, the trial court instructed the jury (1) on what it means to be a party to a crime, (2) that the jury was not authorized to find a defendant guilty based on mere presence or mere association, and (3) that it must consider each count separately.

after the fact. 186 Ga. at 218. The trial court nonetheless charged the jury on the concept of being an accessory. Id. at 219. It is error to charge the jury on an offense not embraced in the indictment. See State v. Hightower, 252 Ga. 220, 223 (312 SE2d 610) (1984); Pressley v. State, 207 Ga. 274, 280 (5) (61 SE2d 113) (1950). Being an accessory after the fact is not a lesser included offense of murder, and thus it is error to instruct on the crime of accessory after the fact merely on the premise that it is a lesser included offense of a murder charged in the indictment. See Hampton, 289 Ga. at 622 (2); Pressley, 207 Ga. at 280 (5); see also Hill v. State, 221 Ga. 65, 67 (6) (142 SE2d 909) (1965). Therefore, in Ivey, the trial court erred in instructing the jury on the concept of accessory after the fact where the defendant was not charged with such in the indictment. 186 Ga. at 217 (error to charge on the definition of accessory "without any statement to the jury that the defendant, if guilty of being an accessory after the fact, could not be convicted as such under the indictment for murder"). Without such a separate charge in the indictment, and without the option to convict the defendant of being an accessory, the Ivey jury was essentially invited to convict the defendant of the crime that *was* charged — murder — based on a mere finding of accessory after the fact. Obviously, this was error. But here, Baskin

27

*was* charged with hindering. Of course it was not error to charge on that offense and doing so did not violate <u>Ivey</u>. Baskin has not shown any error, let alone plain error, in the trial court's failure to give the charge he now says should have been given.

Baskin raises a substantial challenge to our case law regarding the proper remedy for the allegedly mutually exclusive verdicts of murder and hindering.[11] But because we conclude that the verdicts here were not mutually exclusive, no remedy whatsoever is necessary, and the question of the proper remedy is not before us. Baskin is not entitled to a new trial here based on the jury's return of guilty verdicts on both murder and hindering.[12]

<u>Judgments affirmed.  All the Justices concur.</u>

---

[11] Baskin suggests that we should reconsider our precedent that holds that the proper remedy when a jury returns guilty verdicts on both murder and hindering is to vacate the hindering conviction. Our case law to this effect may well be at odds with our case law on mutually exclusive verdicts more generally. Compare <u>Hampton</u>, 289 Ga. at 622-623 (2) (appellant may not be convicted of both murder and hindering, but proper remedy is to vacate hindering conviction alone); with <u>Walker v. State</u>, 293 Ga. 709, 716-717 (2) (e) (749 SE2d 663) (2013) (insufficient to set aside lesser verdict alone where there are mutually exclusive verdicts), overruled on other grounds by <u>State v. Springer</u>, 297 Ga. 376, 383 (2) & n.4 (774 SE2d 106) (2015).

[12] The State did not file a cross-appeal, and so whether the trial court erred in vacating the hindering conviction is not before us. See <u>Dixon</u>, 302 Ga. at 697-698 (4).

Decided June 4, 2018 – Reconsideration denied July 12, 2018.

Murder. Fulton Superior Court. Before Judge Downs.

Steven E. Phillips, for appellant (case no. S18A0147).

Christina R. Cribbs, Tyler R. Conklin, for appellant (case no. S18A0148).

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Arthur C. Walton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.