**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL, J and SENIOR APPELLATE JUDGE.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**April 09, 2020**

# In the Court of Appeals of Georgia

A20A0736. HINTON v. THE STATE.

PHIPPS, Senior Appellate Judge.

After a jury trial, David Hinton was convicted of driving under the influence of drugs (less safe) and related traffic offenses. He appeals from the denial of his motion for new trial, arguing that the trial court's jury charge regarding his refusal to submit to a blood test constituted plain error. For the following reasons, we affirm.

On May 24, 2018, an officer with the Georgia State Patrol conducted a traffic stop of Hinton for driving without headlights and failure to wear a safety belt. As the officer approached the driver's window of the vehicle, he noticed an odor of marijuana emanating from the car and that Hinton's eyes were bloodshot and had constricted pupils. Hinton admitted to eating a marijuana stem approximately two hours before the stop. The officer administered three field sobriety tests as part of the

roadside stop: the horizontal gaze nystagmus test (HGN), the walk-and-turn test, and the one-leg stand. The officer testified that on the HGN, the officer observed zero of six possible clues. However, he explained that "[m]arijuana does not cause HGN. [He] observed no clues on that test, which is . . . to be expected when someone is using marijuana." On the walk-and-turn test, the officer observed seven of eight possible clues, and on the one-leg stand he observed two of four clues. The officer also administered the modified Romburg balance test, where he observed eyelid and body tremors along with a sped up internal clock, which are consistent with marijuana use. He also checked Hinton's eyes for lack of convergence, and the results were also consistent with marijuana usage.

The officer arrested Hinton, and then read him the Georgia implied consent warning for suspects age 21 or over. The Georgia implied consent warning provides, in part, that "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. . . . Your refusal to submit to the required testing may be offered into evidence against you at trial." OCGA § 40-5-67.1 (b) (2). Hinton refused to submit to a blood test.

At the jury trial, the trial court gave the following jury charge on Georgia's implied consent law:

> A person accused of driving under the influence to the extent that he was less safe has the right to refuse to submit to chemical tests of his blood requested by the law enforcement officer. Should you find that the defendant refused to take the requested test, you may infer that the test would have shown the presence of drugs, though not that the drugs impaired his driving. Whether or not you draw such an inference is for you to determine. The inference may be rebutted. The inference alone is not sufficient to convict the defendant.

The jury found Hinton guilty of driving under the influence (less safe), failure to wear a seatbelt, and driving without headlights, and he was convicted. He filed a motion for new trial, which was denied.

On appeal, Hinton argues that the trial court committed reversible error in failing to grant his motion for new trial because his constitutional right against self-incrimination was violated during the trial. Citing to *Elliott v. State*, 305 Ga. 179 (824 SE2d 265) (2019), Hinton urges that the charge instructing that the jury could infer by his refusal to submit to a blood test that such test would have shown the presence of drugs violated his right against self-incrimination.

3

Because Hinton did not object to this jury charge on the same ground he now raises before the jury retired to deliberate,

appellate review of his claim[] is precluded unless the particular jury instruction was plain error which affects his substantial rights. An appellate court may reverse a trial court if the instructional error was not affirmatively waived by the defendant, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *Woodard v. State*, 296 Ga. 803, 807 (2) (771 SE2d 362) (2015).

In the instant case, the objected-to jury instruction was not in error. In *Elliot,* our Supreme Court acknowledged its prior holding in *Olevik v. State*, 302 Ga. 228 (806 SE2d 505) (2017), which relied on Paragraph XVI of the Bill of Rights of the Georgia Constitution to find that "the Georgia Constitution's right against compelled self-incrimination prevents the State from forcing someone to submit to a chemical *breath* test." (Emphasis supplied). 305 Ga. at 179. In light of the recognition of the constitutional right to refuse State-administered breath tests, our Supreme Court in *Elliott* held that the exercise of this constitutional right could not be admitted as evidence against a defendant. Id. at 223.

4

However, in *State v. Johnson*, __ Ga. App. __ (1) (b) (A19A2320, decided March 12, 2020), this Court decided that the admission of a refusal to consent to *blood* testing did not implicate the right against self-incrimination. In *Johnson*, this Court cited to the special concurrence authored by Justice Boggs and joined by Justices Blackwell and Bethel in *Elliott*, which highlighted that "the holdings of *Olevik* and *Elliott* are limited to chemical tests of a driver's *breath*, not tests of a driver's blood." (Emphasis in original.) 305 Ga. at 224 (Boggs, J., concurring). In *Johnson*, supra, this Court concluded that although

> *Olevik* and *Elliott* make clear that evidence of a defendant's invocation of the right against self-incrimination by refusing to consent to a State-administered breath test is inadmissible, . . . neither the United States nor Georgia Supreme Courts have found admission of a refusal to consent to blood testing to implicate the right against self-incrimination. Accordingly, such evidence is not constitutionally inadmissible.

*Johnson*, __ Ga. App. at *7 (1) (b). Because the trial court's jury instruction correctly charged that Hinton's failure to submit to a blood test could be used as evidence against him at trial, we affirm.

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur*.